**13-1839(L)**

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

▶▶◀◀

JOYCE BARLOW,

*Plaintiff-Appellee,*

*v.*

COLGATE PALMOLIVE COMPANY,

*Defendant-Appellant,*

*and*

JOHN CRANE-HOUDAILLE, INCORPORATED, *et al.*,

*Defendants.*

_____

CLARA G. MOSKO,

*Plaintiff-Appellee,*

*v.*

COLGATE PALMOLIVE COMPANY,

*Defendant-Appellant,*

*and*

JOHN CRANE-HOUDAILLE, INCORPORATED, *et al.*,

*Defendants.*

_____

*On Appeal from the United States District Court*
*for the District of Maryland (Baltimore)*

═══════════════════

## BRIEF FOR DEFENDANT-APPELLANT
## COLGATE-PALMOLIVE COMPANY

═══════════════════

Thomas P. Bernier
SEGAL MCCAMBRIDGE SINGER
  & MAHONEY
One North Charles Street, Suite 2500
Baltimore, Maryland 21201
410-779-3960

Faith E. Gay
William B. Adams
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
212-849-7000

*Attorneys for Defendant-Appellant*
*Colgate-Palmolive Company*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1(a) of the Local Rules of the Fourth Circuit, Colgate-Palmolive Company ("Colgate") states that it is a publicly-traded company that has no parent corporation and no entity owning 10% or more of its stock. Colgate further states that no other publicly-held corporation or other publicly-held entity has a direct financial interest in the outcome of this litigation, that it is not a trade association, and that this case does not arise out of any bankruptcy proceeding.

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................i

TABLE OF AUTHORITIES ...................................................................iv

PRELIMINARY STATEMENT ..............................................................1

JURISDICTIONAL STATEMENT ..........................................................3

STATEMENT OF ISSUES ....................................................................4

STATEMENT OF THE CASE ................................................................4

STATEMENT OF FACTS .....................................................................6

     A.    The State-Court Complaints ..................................................6

     B.    The Removal To Federal Court Based On Fraudulent Joinder Of Maryland Defendants ........................................................7

     C.    The Remand To State Court Based On Plaintiffs' Counsel's Representations That Plaintiffs Have *Bona Fide* Claims Against Maryland Defendants ........................................................9

     D.    Plaintiffs' Counsel's Admissions Immediately Following Remand That Plaintiffs Have No Intention To Pursue Claims Against Maryland Defendants And No Evidentiary Basis For Doing So ......................................................................11

     E.    Colgate's Motions For Sanctions And For Rule 60(b)(3) Relief........14

     F.    The District Court's Orders Denying Sanctions And Rule 60(b)(3) Relief ....................................................................16

SUMMARY OF ARGUMENT ...............................................................17

STANDARD OF REVIEW ....................................................................19

ARGUMENT ...................................................................................20

I.    THE DISTRICT COURT ERRED AS A MATTER OF LAW IN
      RULING THAT IT LACKED JURISDICTION TO VACATE THE
      REMAND ORDERS ............................................................20

      A.    The District Court's Ruling Conflicts With The Plain Meaning
            Of Section 1447(d) ...............................................21

      B.    Congress's Purpose In Enacting Section 1447(d) Confirms That
            It Does Not Preclude Vacatur Of A Remand Order Due To
            Fraud Or Other Misconduct ....................................28

II.   THIS COURT SHOULD REMAND WITH INSTRUCTIONS TO
      VACATE THE REMAND ORDERS IN LIGHT OF PLAINTIFFS'
      FRAUDULENT MISREPRESENTATIONS ................................32

      A.    The Remand Orders Should Be Vacated Pursuant To Rule
            60(b)(3) .............................................................34

      B.    The Remand Orders Should Be Vacated As A Sanction
            Pursuant To Rule 11 Or The Courts' Inherent Authority ..................43

            1.    Plaintiffs' Counsel's Misconduct Warrants Sanctions ............44

            2.    Vacatur Of The Remand Orders Is The Appropriate
                  Sanction ....................................................48

CONCLUSION ........................................................................50

STATEMENT WITH RESPECT TO ORAL ARGUMENT .................................50

CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)....................................51

CERTIFICATE OF SERVICE ........................................................52

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Advanta Tech. Ltd. v. BP Nutrition, Inc.*,
  2008 WL 4619708 (E.D. Mo. Oct. 16, 2008)....................................26

*Aggarao v. MOL Ship Mgmt. Co., Ltd.*,
  675 F.3d 355 (4th Cir. 2012) ........................................................19

*AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*,
  903 F.2d 1000 (4th Cir. 1990) ................................................39, 41

*Al-Fayed v. C.I.A.*,
  254 F.3d 300 (D.C. Cir. 2001)......................................................33

*Ali v. CIT Tech. Fin. Servs., Inc.*,
  981 A.2d 759 (Md. Ct. Spec. App. 2009)......................................46

*Am. Reliable Ins. Co. v. Stillwell*,
  336 F.3d 311 (4th Cir. 2003) ........................................................19

*Anderson v. Cryovac, Inc.*,
  862 F.2d 910 (1st Cir. 1988)...................................................25, 35

*Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*,
  179 F.3d 1279 (11th Cir. 1999) ....................................................22

*Baldridge v. Kentucky-Ohio Transp., Inc.*,
  983 F.2d 1341 (6th Cir. 1993) ......................................................29

*Belk, Inc. v. Meyer Corp., U.S.*,
  679 F.3d 146 (4th Cir. 2012) ........................................................19

*In re Briscoe*,
  448 F.3d 201 (3d Cir. 2006) .........................................................41

*Brown & Williamson Tobacco Corp. v. F.T.C.*,
  710 F.2d 1165 (6th Cir. 1983) ......................................................32

*Brubaker v. City of Richmond*,
  943 F.2d 1363 (4th Cir. 1991) ......................................................26

*Buckley v. Littell,*
    539 F.2d 882 (2d Cir. 1976) .................................................................33

*Carlsbad Tech., Inc. v. HIF Bio, Inc.,*
    556 U.S. 635 (2009)...........................................................................30

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991).................................................................44, 45, 48

*Chesapeake & Ohio Ry. Co. v. Cockrell,*
    232 U.S. 146 (1914)...........................................................................41

*Chi., Rock Island & Pac. Ry. Co. v. Schwyhart,*
    227 U.S. 184 (1913)...........................................................................41

*Clorox Co. v. U.S. Dist. Court for N. Dist. of Cal.,*
    779 F.2d 517 (9th Cir. 1985) .............................................................30

*Combs v. Rockwell Int'l Corp.,*
    927 F.2d 486 (9th Cir. 1991) .............................................................26

*Consolidated Doors, Inc. v. Mid-America Door Co.,*
    120 F. Supp. 2d 759 (E.D. Wis. 2000) ...............................................26

*Cooter & Gell v. Hartmarx Corp.,*
    496 U.S. 384 (1990).....................................................................26, 27

*Davis v. Wakelee,*
    156 U.S. 680 (1895)...........................................................................47

*Didie v. Howes,*
    988 F.2d 1097 (11th Cir. 1993) ...........................................................4

*Faulk v. Husqvarna Consumer Outdoor Prods. N.A.,*
    849 F. Supp. 2d 1327 (M.D. Ala. 2012).............................................41

*Foster v. Chesapeake Ins. Co.,*
    933 F.2d 1207 (3d Cir. 1991) .............................................................30

*Green v. Foley,*
    856 F.2d 660 (4th Cir. 1988) ...........................................36, 37, 39, 43

*Hartley v. CSX Transp., Inc.*,
187 F.3d 422 (4th Cir. 1999) ...................................................................39, 40

*Henry v. Gill Indus., Inc.*,
983 F.2d 943 (9th Cir. 1993) ...................................................................49

*Ill. Mun. Ret. Fund v. Citigroup, Inc.*,
391 F.3d 844 (7th Cir. 2004) ...................................................................23

*Jenkins v. Methodist Hosps. of Dall., Inc.*,
478 F.3d 255 (5th Cir. 2007) ...................................................................48

*Jimenez v. Madison Area Technical Coll.*,
321 F.3d 652 (7th Cir. 2003) ...................................................................49

*Kircher v. Putnam Funds Trust*,
547 U.S. 633 (2006).................................................................................23

*Kissinger-Campbell v. C. Randall Harrell, M.D.,  P.A.*,
418 F. App'x 797 (11th Cir. 2011) ...........................................................25

*In re Kunstler*,
914 F.2d 505 (4th Cir. 1990) ...................................................................26

*Lincoln Prop. Co. v. Roche*,
546 U.S. 81 (2005)...................................................................................41

*Lonsdorf v. Seefeldt*,
47 F.3d 893 (7th Cir. 1995) .....................................................................36

*In re Lowe*,
102 F.3d 731 (4th Cir. 1996) ...............................................................16, 27

*Marina Mgmt. Servs., Inc. v. Vessel My Girls*,
202 F.3d 315 (D.C. Cir. 2000).................................................................49

*Marshall v. Manville Sales Corp.*,
6 F.3d 229 (4th Cir. 1993) .......................................................................39

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005).................................................................................40

*In re Mbakpuo*,
  1995 WL 224050 (4th Cir. Apr. 17, 1995) ..........................................................4

*Methode Elecs., Inc. v. Adam Techs., Inc.*,
  371 F.3d 923 (7th Cir. 2004) .........................................................................45

*MLC Auto., LLC v. Town of S. Pines*,
  532 F.3d 269 (4th Cir. 2008) .........................................................................19

*Morris v. Wachovia Secs., Inc.*,
  2007 WL 2126344 (E.D. Va. July 20, 2007) ...................................................46

*New Hampshire v. Maine*,
  532 U.S. 742 (2001).......................................................................................47

*PaineWebber, Inc. v. Cohen*,
  276 F.3d 197 (6th Cir. 2001) .........................................................................32

*Peerless Indus. Paint Coatings Co. v. Canam Steel Corp.*,
  979 F.2d 685 (8th Cir. 1992) .........................................................................49

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996).................................................................................28, 30

*Rozier v. Ford Motor Co.*,
  573 F.2d 1332 (5th Cir. 1978) .................................................................25, 37

*Salisbury Beauty Sch. v. State Bd. of Cosmetologists*,
  300 A.2d 367 (Md. 1973) ...............................................................................46

*In re Sargent*,
  136 F.3d 349 (4th Cir. 1998) .........................................................................26

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
  402 F.3d 1198 (Fed. Cir. 2005) .....................................................................36

*Schultz v. Butcher*,
  24 F.3d 626 (4th Cir. 1994) ..............................24, 25, 33, 34, 35, 36, 39, 41, 42

*Sedlack v. Braswell Servs. Grp., Inc.*,
  134 F.3d 219 (4th Cir. 1998) .........................................................................47

*Seedman v. U.S. Dist. Ct.*,
  837 F.2d 413 (9th Cir. 1988) .................................................................26

*Silvestri v. Gen. Motors Corp.*,
  271 F.3d 583 (4th Cir. 2001) ...............................................................44

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ............................................................32

*Smallwood v. Ill. Cent. R.R. Co.*,
  385 F.3d 568 (5th Cir. 2004) ...............................................................41

*South Shore Ranches, LLC v. Lakelands Co., LLC*,
  2010 WL 1850172 (E.D. Cal. May 6, 2010) ........................................26

*Square Constr. Co. v. Wash. Metro. Area Transit Auth.*,
  657 F.2d 68 (4th Cir. 1981) .................................................25, 35, 36

*Summers v. Howard Univ.*,
  374 F.3d 1188 (D.C. Cir. 2004) ..........................................................33

*In re TMI Litig. Cases Consol. II*,
  940 F.2d 832 (3d Cir. 1991) .................................................28, 29, 30

*Thermtron Prods., Inc. v. Hermansdorfer*,
  423 U.S. 336 (1976) ..............................................................28, 29, 30

*Tiverton Bd. of License Comm'rs v. Pastore*,
  469 U.S. 238 (1985) .............................................................................44

*Tramonte v. Chrysler Corp.*,
  136 F.3d 1025 (5th Cir. 1998) ......................................................22, 29

*In re U.S. Healthcare*,
  159 F.3d 142 (3d Cir. 1998) ................................................................23

*United Mktg. Solutions, Inc. v. Fowler*,
  2013 WL 693098 (4th Cir. Feb. 27, 2013) ...........................................3

*United States v. Criden*,
  681 F.2d 919 (3d Cir. 1982) ................................................................32

*United States v. Fenner*,
   147 F.3d 360 (4th Cir. 1998) ...............................................................33

*United States v. Rice*,
   327 U.S. 742 (1946)..........................................................................28

*United States v. Shaffer Equip. Co.*,
   11 F.3d 450 (4th Cir. 1993) ........................................................44, 48

*U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*,
   513 U.S. 18 (1994)............................................................................22

*Vogel v. U.S. Office Prods. Co.*,
   258 F.3d 509 (6th Cir. 2001) ...........................................................23

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) ...........................................................19

*Williams v. Beemiller, Inc.*,
   527 F.3d 259 (2d Cir. 2008) ......................................................22, 23

*Zinkand v. Brown*,
   478 F.3d 634 (4th Cir. 2007) ...........................................................27

## Statutes and Rules

28 U.S.C. § 1291 ..................................................................................3, 4

28 U.S.C. § 1332 .....................................................................................3

28 U.S.C. § 1441 .....................................................................................3

28 U.S.C. § 1446(b)(3)............................................................................8

28 U.S.C. § 1447(c) ....................................................................29, 30, 31

28 U.S.C. § 1447(d) .......................................... 2-4, 11, 16, 17, 20-23, 25-32

FED. R. CIV. P. 11 ......................................................6, 26, 43, 44, 46

FED. R. CIV. P. 11(b)(3)........................................................................44

FED. R. CIV. P. 11(c)............................................................................48

FED. R. CIV. P. 11(c)(1) .......................................................................44, 46

FED. R. CIV. P. 11, advisory committee's note (1993)........................46, 49

FED. R. CIV. P. 59(e) ...........................................................................27

FED. R. CIV. P. 60(b) ..........................................................................3, 19

FED. R. CIV. P. 60(b)(2)........................................................................24

FED. R. CIV. P. 60(b)(3).....................2, 3, 4, 6, 14, 16-21, 23-27, 32, 34-37, 40-43

MD. R. 1-311 ......................................................................................15

MD. R. 1-341 ......................................................................................15

## Other Authorities

BLACK'S LAW DICTIONARY
   (9th ed. 2009) ...............................................................21, 23

BLACK'S LAW DICTIONARY
   (6th ed. 1990) ....................................................................22

Mark Herrmann,
   Thermtron *Revisited: When and How Federal Trial Court Remand*
   *Orders are Reviewable,*
   19 ARIZ. ST. L.J. 395 (1987-88).........................................28

x

## PRELIMINARY STATEMENT

These consolidated appeals are from two orders of the U.S. District Court for the District of Maryland (Nickerson, J.) that denied motions by Defendant-Appellant Colgate-Palmolive Company ("Colgate") seeking vacatur of the district court's prior orders remanding actions brought by Plaintiffs-Appellees Joyce Barlow and Clara Mosko to Maryland state court. The underlying actions seek millions of dollars in damages for personal injuries under the novel theory—never accepted by any court or regulator—that Colgate's Cashmere Bouquet cosmetic talcum powder contained asbestos that causes mesothelioma. In 2011, Plaintiffs filed their actions in the specialized asbestos docket in the Maryland Circuit Court for Baltimore City, naming a litany of defendants, including several defendants based in Maryland. In June 2012, after Plaintiffs' deposition testimony and discovery responses indicated that they had no evidence that their injuries might have been caused by any in-state defendant, Colgate removed the actions to federal court on the basis that Plaintiffs had fraudulently joined the Maryland defendants to defeat federal jurisdiction.

In the district court, each Plaintiff sought remand, arguing that she had evidence in support of a genuine claim against a Maryland defendant. The district court (in separate orders issued by Judges Nickerson and Quarles, referred to herein as the "Remand Orders") granted both motions, explicitly relying on

Plaintiffs' representations that there existed a real possibility that they would obtain judgment against an in-state defendant. But after securing remand on this basis, Plaintiffs' counsel immediately told the Circuit Court for Baltimore City that this was a "one defendant case," *disclaiming* both the existence of any evidence against an in-state defendant and any intention to pursue claims against those defendants.

Colgate thereafter moved in the district court for sanctions and for relief from the Remand Orders pursuant to Fed. R. Civ. P. 60(b)(3), arguing that Plaintiffs' counsel had made false statements and calculated misrepresentations regarding Plaintiffs' intention to pursue claims against the in-state defendants, solely for the purpose of defeating federal jurisdiction and depriving Colgate of the federal forum to which it is entitled. The district court acknowledged that Colgate had raised "substantial" allegations and that the statements by Plaintiffs' counsel "appear to be in sharp conflict," but nevertheless denied vacatur on the ground that it lacked jurisdiction in light of the prohibition in 28 U.S.C. § 1447(d) on "review[]" of certain orders granting remand to state court.

The district court's jurisdictional ruling is legally erroneous, as it ignores that Colgate's efforts to obtain vacatur of the Remand Orders either as a sanction or pursuant to Rule 60(b)(3) do not require any "review[]" of the underlying orders, but instead seek an assessment of *counsel's misconduct* in procuring them.

Nothing in Section 1447(d)'s text or purpose suggests that Congress intended to deprive federal courts of the ability to ensure the integrity of the judicial process by setting aside a remand order procured by fraud, misrepresentation, or other misconduct. Thus, at the very least, the district court's orders denying sanctions and Rule 60(b)(3) relief should be vacated.

But this Court can and should go further by reversing outright the orders denying sanctions and Rule 60(b)(3) relief, and remanding the cases with instructions to vacate the Remand Orders. Plaintiffs' counsel's misconduct here is so egregious that it would be an abuse of discretion *not* to vacate the Remand Orders. Remand to the district court for further proceedings on Colgate's motions would therefore result only in unnecessary delay and expense as discovery in state court proceeds and the trial in these actions—likely to occur in Fall 2013—rapidly approaches.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 over Colgate's appeals of the district court's June 26, 2013 orders denying its motions for sanctions and relief from the Remand Orders pursuant to Fed. R. Civ. P. 60(b)(3). *See, e.g.*, *United Mktg. Solutions, Inc. v. Fowler*, 2013 WL 693098, at *2 (4th Cir. Feb. 27, 2013) (order denying Rule 60(b) motion reviewable under

section 1291); *In re Mbakpuo*, 1995 WL 224050, at *2 (4th Cir. Apr. 17, 1995) (post-judgment sanctions order reviewable under section 1291); *see also Didie v. Howes*, 988 F.2d 1097, 1103 (11th Cir. 1993) ("[T]he district court's postjudgment order denying Rule 11 sanctions is a properly appealable final order ….").

Colgate filed timely notices of appeal on July 1, 2013.  A1110; A1112.

## STATEMENT OF ISSUES

1.    Whether the district court erred as a matter of law in ruling that the prohibition in 28 U.S.C. § 1447(d) on "review[]" of certain orders remanding a case to state court deprived it of jurisdiction to vacate two remand orders either as a sanction or pursuant to Fed. R. Civ. P. 60(b)(3) by reason of fraud, misrepresentation, or misconduct.

2.    Whether the district court's remand orders should be vacated either as a sanction or pursuant to Fed. R. Civ. P. 60(b)(3), where the plaintiffs' counsel made misrepresentations in the district court that were calculated to defeat jurisdiction and thereby to deprive the defendant of a federal forum.

## STATEMENT OF THE CASE

Plaintiff Clara Mosko, a Florida citizen, filed a complaint in the Circuit Court for Baltimore City on October 26, 2011, against Colgate and 35 other defendants (including six Maryland entities), asserting claims arising from her alleged asbestos-related illness.  A56-69.  Plaintiff Joyce Barlow, a Maryland

citizen, filed a complaint in the Circuit Court for Baltimore City on August 31, 2011, against 23 defendants (including four Maryland entities), also asserting claims arising from her alleged asbestos-related illness. A47-55. Barlow amended her complaint on September 19, 2011 (A91-92), and again on November 21, 2011, with the latter amendment adding Colgate as a defendant (A93). Both Plaintiffs are represented by the same counsel, and both cases were assigned to a specialized asbestos docket in state court.

After both Plaintiffs maintained in their interrogatory responses and deposition testimony that the sole cause of their asbestos-related illness was exposure to Colgate's Cashmere Bouquet (*see* A406; A408; A410; A416; A422; A433; A449; A587; A597; A613; *see also* A29; A38; A414), on June 15, 2012, Colgate filed notices of removal to the U.S. District Court for the District of Maryland on the basis that all defendants other than Colgate should be ignored for jurisdictional purposes under the "fraudulent joinder" doctrine, and that the relevant parties are completely diverse (A27-35; A36-46). Plaintiffs moved to remand the cases to Maryland state court, asserting that they had genuine, factually supported claims against Maryland defendants. *See* A94-119; A244-69. On September 24, 2012, the district court (Quarles, J.) granted the motion to remand *Mosko* (A351-62), and, on November 1, 2012, the district court (Nickerson, J.) granted the motion to remand *Barlow* (A363-70).

On remand, Plaintiffs' counsel immediately disclaimed any evidence against, or intention to pursue, any Maryland defendant in either action, and Colgate thereafter filed in the district court motions for sanctions pursuant to Fed. R. Civ. P. 11 and the court's inherent authority. *See* A371-402; A524-55. On June 20, 2013, the district court held a hearing on the motions, and on June 24, 2013, Colgate filed companion motions for relief from the Remand Orders pursuant to Fed. R. Civ. P. 60(b)(3). *See* A1099-1105. By order entered June 26, 2013, the district court denied both the sanctions motions and the Rule 60(b)(3) motions. A1106-07; A1108-09.

Colgate filed timely notices of appeal (A1110; A1112), and, following consolidation by this Court, moved to expedite those appeals (*see* ECF No. 3). This Court thereafter entered an accelerated briefing schedule. *See* ECF No. 14.

## STATEMENT OF FACTS

### A.    The State-Court Complaints

Plaintiffs assert that they contracted mesothelioma through personal use (from the 1950s through the early 1970s) of Colgate's Cashmere Bouquet talcum powder, which was allegedly contaminated with asbestos. This theory is both novel (no court or regulator has ever found it meritorious) and devoid of factual support: Asbestos was never an ingredient of Cashmere Bouquet talcum powder, whose primary ingredient was at all relevant times pure, high-grade cosmetic talc.

Rather than file detailed complaints setting forth their allegations, Plaintiffs initiated this litigation by filing "Short Form" Complaints adopting the generic allegations of the Baltimore City Circuit Court's Amended Master Complaint—a document developed decades ago for the purpose of streamlining the thousands of asbestos cases that were then being filed by workers in the asbestos and construction industries.  A47; A56; A93; A70; A325-26.  In the "traditional" cases for which the Amended Master Complaint was designed, workers alleged asbestos-related injuries arising from occupational exposure to products that intentionally included asbestos.  Neither Mosko nor Barlow could substantiate such allegations (neither worked in a "traditional" asbestos-related industry), but each of their Short Form Complaints nevertheless adopted the Amended Master Complaint's generic allegations in wholesale fashion and without elaboration even as to which products allegedly caused their illnesses.  A54; A66.  Each Plaintiff seeks to recover $40 million in compensatory damages and $15 million in punitive damages on state-law theories of strict liability, breach of warranty, negligence, fraud, conspiracy, and market share liability.  *See* A324.

## B.    The Removal To Federal Court Based On Fraudulent Joinder Of Maryland Defendants

In addition to asserting claims against Colgate (a Delaware corporation headquartered in New York) and other diverse parties, Plaintiffs (citizens of Maryland and Florida, respectively) also named several Maryland citizens as

defendants.   A47-53; A92; A93; A56-65.[1]   Discovery in state court revealed, however, that Plaintiffs were pursuing claims only against Colgate.   Neither Plaintiff identified any potential source of asbestos other than Colgate's Cashmere Bouquet, either in their May 16, 2012 responses to Colgate's interrogatories (*see* A422; A587; A433; A597; A449; A613), or in their subsequent depositions—in which each Plaintiff agreed that she had no evidence to support a claim against any defendant other than Colgate (*see, e.g.*, A406; A408; A410; A414; A416).   Mosko confirmed that "the only product that [she] believe[s] contained asbestos [she was] exposed to was Cashmere Bouquet."   A410; *see also* A406; A408.   Barlow likewise repeatedly admitted that she did not "believe that [she] w[as] exposed to asbestos through any source other than Cashmere Bouquet."   A416; *see also, e.g.*, A414; A329 (summarizing other admissions).

These representations led Colgate to "ascertain[] that the case is one which is or has become removable," 28 U.S.C. § 1446(b)(3), because the Maryland-citizen defendants were joined for the sole purpose of defeating federal jurisdiction and should therefore be ignored for purposes of removal.   Colgate thus informed Plaintiffs' counsel of its intent to remove these cases to federal court unless

---

[1]     Specifically, Mosko and Barlow each sued Maryland citizens E.L. Stebbing & Co., Inc.; Hampshire Industries, Inc.; MCIC, Inc.; and the Wallace & Gale Asbestos Settlement Trust.  A47-49; A52-53; A56-58; A61.  Mosko also sued Maryland citizens Walter E. Campbell Co., Inc. and AC&R Insulation Co., Inc. A63.

Plaintiffs could produce evidence sufficient to support a possibility of recovery against the Maryland defendants. A659. Counsel declined the invitation. A661. Accordingly, Colgate filed its notices of removal on June 15, 2012, under the doctrine of "fraudulent joinder," arguing that Plaintiffs possessed no evidence to support their claims against the in-state defendants. A27; A36. *Mosko* was assigned to Judge Quarles, while *Barlow* was assigned to Judge Nickerson.

### C. The Remand To State Court Based On Plaintiffs' Counsel's Representations That Plaintiffs Have *Bona Fide* Claims Against Maryland Defendants

Both Plaintiffs moved to remand (A94; A244), arguing for the first time—and in contrast to their discovery responses—that they had *bona fide* claims against the Maryland defendants (*see, e.g.*, A94; A114; A245; A265). In *Mosko*, counsel cited Mosko's deposition testimony that she had worked for the Department of Agriculture in a building that was undergoing renovations (A247; A256-57), and then referenced certain invoices purporting to show that Maryland-based defendant Walter E. Campbell Co. used asbestos-containing products while performing those renovations (A247). Based upon this evidence, counsel asserted the existence of an "inference that Ms. Mosko suffered some type of exposure to asbestos at her place of employment" (A257), and contended that "nothing in Ms. Mosko's testimony … precludes the possibility of recovery against non-diverse Defendants" (A265).

9

Counsel relied on similar representations to secure remand in *Barlow*. There, counsel represented to the district court that Cashmere Bouquet is "not the only potential source" of Barlow's injuries (A94-95), and cited portions of her deposition testimony and medical records to argue that "there is some circumstantial evidence to suggest that Ms. Barlow could possibly have been exposed to asbestos-containing products while working [on an assembly line] at RMR Corporation," a Maryland-based company that *has never been a defendant* in Barlow's action (A106). On that basis, counsel represented to the district court that "there is nothing in Ms. Barlow's testimony that precludes the possibility of recovery against non-diverse Defendants" (A114), and that remand was warranted because "it cannot be said that there is no possibility that a claim could be successfully proven against any of the non-diverse defendants" (A106).

The district court granted both motions to remand, in each case relying on counsel's representations that there was a possibility that Plaintiffs could recover against an in-state entity. Specifically, in September 2012, Judge Quarles ruled that "Mosko has shown more than 'a glimmer of hope' of recovering against [Walter E. Campbell], an in-state defendant, for exposure during the renovations in the [Department of Agriculture] building. Therefore, removal was improper." A358-59 (footnote omitted). In November 2012, Judge Nickerson ruled similarly in *Barlow*, crediting counsel's representation that "there remains a possibility that

10

[Barlow] was exposed to asbestos while working at RMR Corporation," and thus concluding that Barlow had made out "a 'glimmer of hope' on [her] claims against the in-state defendants."   A368.

### D. Plaintiffs' Counsel's Admissions Immediately Following Remand That Plaintiffs Have No Intention To Pursue Claims Against Maryland Defendants And No Evidentiary Basis For Doing So

Because Colgate possessed no evidence that the "glimmer[s] of hope" were anything but legitimate, and because 28 U.S.C. § 1447(d) barred it from appealing the Remand Orders, Colgate returned to the Circuit Court for Baltimore City with the expectation of litigating a case with multiple co-defendants.   Plaintiffs, however, never pursued any discovery in support of the possible claims they identified as the sole basis for remand.   Barlow never even sought to amend her complaint to add as a defendant RMR Corporation (*see* A996), the sole Maryland party against whom the district court ruled she had a "glimmer of hope" (A368).   And Mosko similarly made no effort to pursue her putative claims against Walter E. Campbell Co., even as Colgate urged the state court to allow it to seek evidence against that nominal defendant.  *See* A997-98; A1035-36.

Instead, on November 9, 2012, a mere *eight days* after securing remand of the *Barlow* action, Plaintiffs' counsel repudiated the factual basis on which Judges Nickerson and Quarles had founded their Remand Orders.   Specifically, Plaintiffs filed a brief (A468) in support of a motion to consolidate *Barlow* and *Mosko* with

11

two other cases pending against Colgate.  In that brief, counsel argued that the four cases were similar enough to warrant consolidation because *none of the Plaintiffs sought to recover against any defendant other than Colgate.*  Without acknowledging the contrary representations in the district court, counsel asserted to the state court that "neither Plaintiffs' worksites nor their occupations are relevant to this consolidation review because each of the Plaintiffs were [*sic*] exposed, in their homes, to asbestos-containing **Cashmere Bouquet only**."  A475 (emphasis added).  Counsel further asserted that "not one of the Plaintiffs testified [at their depositions] that they were exposed to asbestos as a result of their employment." *Id.*  In particular, counsel highlighted that Mosko had "testified that she was never exposed to any asbestos or asbestos dust generated through any renovation or construction activity."  *Id.*  Summarizing Plaintiffs' position, counsel stated that "there is **absolutely no evidence** to indicate **or even suggest** that the Plaintiffs were exposed to asbestos in any form **other than Cashmere Bouquet**."  A476 (emphasis added).

Plaintiffs' counsel affirmed this about-face less than a week later in a motion to "re-consolidate" the Colgate cases.  In that motion, counsel averred that the "occupations or worksites of the Plaintiffs should not affect the consolidation of these cases for trial because not one of the Plaintiffs testified that they were exposed to asbestos as a result of their employment."  A482.  Counsel represented

12

that Barlow "specifically testified she was not exposed to asbestos" at any workplace, including "RMR Manufacturing," and that "[i]n fact, she testified her *only exposure to asbestos was to Cashmere Bouquet.*" *Id.* (emphasis added). Similarly, the motion asserted that Mosko "testified that she was never exposed to any asbestos or asbestos dust generated through any renovation or construction activity." *Id.* Thus, counsel reiterated that "there is *absolutely no evidence* to indicate *or even suggest* that the Plaintiffs were exposed to asbestos in any form *other than Cashmere Bouquet*." A483 (emphasis added).

At a December 5, 2012 hearing in state court on the consolidation motion, Plaintiffs' counsel again reiterated that recovery against any of the Maryland defendants is impossible. According to counsel, "what is important is the plaintiffs have testified they weren't exposed at their workplace, so their occupation doesn't matter. … There is *no evidence* elicited thus far to indicate these plaintiffs had any exposure *other than the Cashmere Bouquet*." A489 (emphasis added). Counsel confirmed, moreover, that this "*is a one-defendant case*," and that Colgate is the *only* target of Plaintiffs' investigation. A494 (emphasis added).

After the court expressed concern that counsel had made shifting representations in federal and state court, counsel sought to explain that the federal case was different, but wound up admitting that the "glimmer of hope" had been nothing but a ruse to keep the case out of federal court:

> THE COURT: So you told the judges in the U.S. District Court that you were contending there was no viable claim against any of these other defendants?
>
> MR. KELLY: All we had to prove in federal court is that there was a glimmer of hope. And the glimmer of hope is we alleged in the complaint a case against Maryland defendants. …
>
> THE COURT: So once the case came back here, the glimmer disappeared? …
>
> MR. KELLY: The glimmer is in federal court.

A495. Counsel thus conceded in open court that Plaintiffs had no case against any Maryland defendant, and—the "glimmer of hope" having "disappeared"—that they have no intention of attempting to develop one, either.

### E.    Colgate's Motions For Sanctions And For Rule 60(b)(3) Relief

Colgate concluded from counsel's revelations in state court that the representations to the district court were false and that Plaintiffs *never* intended to pursue claims against *any* defendant with Maryland citizenship. Colgate promptly requested that Plaintiffs correct their misstatements and omissions in the district court (A501) but counsel refused (A506). Colgate thereafter moved that court for sanctions in both *Barlow* and *Mosko*, arguing that "Plaintiff's counsel secured remand by manipulating the judicial process through contradictory representations here and in state court." A389; *accord* A541. Colgate requested that the district court "grant monetary sanctions and all other relief appropriate to deter future misconduct and *remedy* the prejudice sustained by Colgate." A378; *accord* A531;

14

*see also* A372 ("Colgate therefore respectfully requests that the Court *impose monetary and/or nonmonetary sanctions*, and such other relief as the Court may deem appropriate, to deter similar misconduct in the future and *to redress the prejudice suffered by Colgate*.") (emphasis added); A525 (same).

Colgate also sought sanctions in state court, contending that Plaintiffs' counsel had made misrepresentations in the district court in a bad-faith attempt to secure Plaintiffs' preferred state court forum. A769. Relying on Maryland Rules 1-311 and 1-341, and the state court's inherent authority, Colgate requested that the complaints be dismissed with leave to re-file only in federal court, arguing that only that sanction would remedy Colgate's prejudice and deter future misconduct. A777-78. The state court denied Colgate's motion on May 10, 2013, explaining that it "ha[d] no reason to believe that the plaintiff in court *in front of me* said anything but what they believed on that issue" (A805) (emphasis added). The court then remarked that the truth of the state-court statements "leaves [Plaintiffs] wherever it leaves them in federal court." A805-06.

Back in federal court, Colgate's sanctions motions were consolidated for decision by Judge Nickerson, who directed that Plaintiffs' respond to Colgate's "substantial" allegations. A712; A713 At the June 20, 2013 hearing on its motions, Colgate explained that vacatur of the Remand Orders would be an appropriate remedial sanction. A1086; A1096. On June 24, 2013, Colgate filed

companion motions pursuant to Rule 60(b)(3) that reiterated its request for relief from the Remand Orders.  A1099-1105.

### F. The District Court's Orders Denying Sanctions And Rule 60(b)(3) Relief

On June 26, 2013, before Plaintiffs had responded to the Rule 60(b)(3) motions, the district court entered a brief order denying the Rule 60(b)(3) motions and the sanctions motions.  A1106; A1108.  The court ruled, *sua sponte*—the parties neither briefed the issue nor addressed it at oral argument—that 28 U.S.C. § 1447(d) deprived the court of jurisdiction to vacate the Remand Orders.  In so ruling, the district court relied exclusively on this Court's decision in *In re Lowe*, 102 F.3d 731, 734 (4th Cir. 1996), which held that Section 1447(d)'s bar on "review[]" of remand orders includes *motions for reconsideration* (A1106; A1108); the district court did not consider the distinction between reconsideration of an order and vacatur of that order because it was procured by fraud, misrepresentations, or other misconduct (A1106; A1108).

The district court understood that Colgate was no longer seeking any relief other than vacatur of the Remand Orders, but nevertheless stated that it would have declined to impose lesser sanctions.  A1106; A1108.  Although the court found it "troubling" that there "appear[s] to be [a] sharp conflict" between Plaintiffs' counsel's representations in federal court and state court, it concluded that counsel's conflicting statements were not sanctionable because they were

16

"attributable to different attorneys in markedly different litigation contexts." A1106; A1108. The court, however, did not explain why those facts were germane to whether counsel had procured the Remand Orders through false statements.

These consolidated appeals followed.

## SUMMARY OF ARGUMENT

The district court's orders denying Colgate's motions for sanctions and for relief under Fed. R. Civ. P. 60(b)(3) on account of misconduct by Plaintiffs' counsel should be reversed or at the very least vacated. *First*, the court's ruling that it lacked jurisdiction to consider Colgate's request to vacate the Remand Orders is incorrect as a matter of law. The statute on which that conclusion rests, 28 U.S.C. § 1447(d), prohibits only "review[]" of the merits of an order remanding a case to state court, and the statute has for decades been applied narrowly in keeping with its limited purpose of preventing reexamination of a district court's determination of its own removal jurisdiction. Colgate's motion, however, did not seek "review[]" of the Remand Orders, but instead sought consideration of the separate question whether counsel's misrepresentations tainted the process by which Plaintiffs procured the Remand Orders. Nothing in Section 1447(d)'s text or purpose limits federal courts' authority to determine whether a remand order has been obtained by fraud and to police the integrity of their own proceedings. The district court thus had jurisdiction to consider Colgate's motions for sanctions and

17

Rule 60(b)(3) relief, and at minimum vacatur of the district court's orders is warranted.

*Second*, since it would be an abuse of discretion for the district court to dispose of Colgate's motions other than by vacating the Remand Orders, this Court should reverse outright the orders denying Colgate's motions and direct that the Remand Orders be vacated. Colgate is entitled to relief under Rule 60(b)(3), which is designed to protect the fairness of judicial proceedings against fraud and other misconduct. In the district court, Plaintiffs secured remand based on their counsel's representations that they had potential claims against Maryland entities and that "nothing" in Plaintiffs' deposition testimony "precludes the possibility of recovery against non-diverse Defendants." But counsel disclaimed both of these representations immediately upon return to state court, where counsel stated, without any discovery from the in-state defendants, that Plaintiffs have no chance of—and no intention to pursue—a judgment against any Maryland defendant. Plaintiffs' counsel's misrepresentations of their view of the evidence and obfuscations of their own intentions prevented Colgate from obtaining a full and fair hearing on the crucial jurisdictional issue of whether the Maryland defendants were fraudulently joined. The requisites for Rule 60(b)(3) relief from judgment are thus met, and the equities weigh heavily against Plaintiffs and their counsel, who have obtained a favorable decision by fraud.

Vacatur of the Remand Orders is warranted even apart from Rule 60(b)(3), because Plaintiffs' counsel should be sanctioned for deceiving the district court in a bad-faith effort to defeat federal jurisdiction and thus to deprive Colgate of the federal forum to which it is entitled. This misuse of the judicial process should be met with sanctions both to remedy past misconduct and to deter such machinations in the future. No sanction other than vacatur of the fraudulently obtained Remand Orders would suffice to achieve these ends.

## STANDARD OF REVIEW

This Court reviews the denial of a motion for sanctions or for relief pursuant to Fed. R. Civ. P. 60(b) for abuse of discretion. *See, e.g.*, *MLC Auto., LLC v. Town of S. Pines,* 532 F.3d 269, 277 (4th Cir. 2008) (Rule 60(b) motion); *Am. Reliable Ins. Co. v. Stillwell,* 336 F.3d 311, 321 (4th Cir. 2003) (sanctions motion). A district court abuses its discretion "if its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding" or where this Court has "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 161 (4th Cir. 2012) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)). A district court thus abuses its discretion where it erroneously concludes that it lacks jurisdiction to grant the requested relief. *See, e.g.*, *Aggarao v. MOL Ship Mgmt.*

*Co., Ltd.*, 675 F.3d 355, 366, 375-77 (4th Cir. 2012) (vacating order denying injunctive relief where district court had erroneously concluded it lacked jurisdiction due to mootness).

## ARGUMENT

## I. THE DISTRICT COURT ERRED AS A MATTER OF LAW IN RULING THAT IT LACKED JURISDICTION TO VACATE THE REMAND ORDERS

The district court erred in concluding that 28 U.S.C. § 1447(d) deprived it of jurisdiction to vacate the Remand Orders either as a sanction or pursuant to Rule 60(b)(3) on the basis of misrepresentations and other misconduct. Section 1447(d) provides in relevant part that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise …." 28 U.S.C. § 1447(d). But that statutory bar is inapplicable here because vacatur of a remand order due to misconduct does not constitute "review[]" of that order. Any contrary holding would run counter to the statute's plain meaning and purpose, and would have the untoward effect of encouraging plaintiffs to fraudulently conceal or misrepresent evidence relevant to the question of federal subject matter jurisdiction while simultaneously leaving federal courts without an effective means of ensuring the integrity of remand proceedings.

### A.    The District Court's Ruling Conflicts With The Plain Meaning Of Section 1447(d)

The district court's denial of vacatur ignores that, by its plain terms, Section 1447(d) prohibits only "review[]" of a remand order.  28 U.S.C. § 1447(d).  The "review[]" contemplated by Section 1447(d) is limited to judicial action addressing the merits of the underlying remand order, and Colgate's request for vacatur as either a sanction or pursuant to Rule 60(b)(3) based on misrepresentations and misconduct does not seek such "review[]."

"Review" is defined as "[c]onsideration, inspection, or reexamination *of a subject or thing*" (in this instance, the order of remand).  BLACK'S LAW DICTIONARY 1434 (9th ed. 2009) (emphasis added).  Similarly, "appellate review" describes the "[e]xamination *of a lower court's decision* by a higher court."  *Id.* (emphasis added).  In each case, the "review" is directed at the substance of what is being reviewed, not at matters collateral to its merits.  Thus, the Eleventh Circuit has held that, Section 1447(d) notwithstanding, federal courts retain jurisdiction to order vacatur of a remand order on grounds independent of the merits of that order:

> To "review" an order, a court must do more than merely cancel it; it must, to some extent, examine it and determine its merits. … A vacatur does not necessarily implicate this sort of examination.  *If we order the district court to vacate an order for reasons that do not involve a reconsideration or examination of its merits, then we have not "reviewed" the order, and therefore have not fallen afoul of section 1447(d)'s prohibition on review.*

21

*Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1288 (11th Cir. 1999) (emphasis added; paragraph break omitted) (citing BLACK'S LAW DICTIONARY 1320 (6th ed. 1990); *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,* 513 U.S. 18, 22-23 (1994)) (concluding that Section 1447(d) did not bar appellate relief from remand order upon collateral finding that district court had erroneously dismissed claims conferring federal jurisdiction).

Consistent with this understanding, courts, including the Supreme Court, have repeatedly emphasized that Section 1447(d) is concerned only with revisiting the *merits* of a remand ruling. Thus, in *Tramonte v. Chrysler Corp.*, 136 F.3d 1025 (5th Cir. 1998), the Fifth Circuit held that it had jurisdiction to vacate a remand order on the ground that district court judge should have recused herself, because such a holding did "not constitute *a review of the merits* of that order, prohibited by 28 U.S.C. § 1447(d)." *Id.* at 1028 (emphasis added). The Fifth Circuit reasoned that Section 1447(d) did not apply, even though "[t]he district court unquestionably based its decision to remand on a lack of subject matter jurisdiction," because the defendant "d[id] not seek to revisit th[e] jurisdictional determination," but only sought to obtain review of the separate question whether recusal was required. *Id.*

Similarly, in *Williams v. Beemiller, Inc.*, 527 F.3d 259 (2d Cir. 2008), the Second Circuit held that it had jurisdiction to consider an appeal of a remand order

where the "appeal d[id] not challenge the merits of the remand order itself." *Id.* at 264. The only question on appeal was whether "the District Court failed to apply the correct standard of review when considering [defendants'] objections to the Magistrate Judge's order remanding the case to state court," *id.*; Section 1447(d) thus had no application because resolution of that issue "d[id] not require review of the merits of the remand order," *id.*; *see also, e.g.*, *Ill. Mun. Ret. Fund v. Citigroup, Inc.*, 391 F.3d 844, 849 (7th Cir. 2004) (Section 1447(d) is limited to "preclud[ing] appellate review *of the reasoning contained in many remand orders*") (emphasis added); *Vogel v. U.S. Office Products Co.*, 258 F.3d 509, 518-19 (6th Cir. 2001) (finding appellate jurisdiction to review remand order where district court had erroneously ruled that it lacked authority to review magistrate judge's remand recommendation); *In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998) (similar); *cf. Kircher v. Putnam Funds Trust*, 547 U.S. 633, 642 (2006) (Section 1447(d) precludes review of "*legal error* in ordering remand") (emphasis added; citation omitted).

Applying this plain meaning, neither Rule 60(b)(3) relief nor vacatur as a sanction for misconduct would constitute prohibited "review[]" of the Remand Orders, as neither motion requires the court to "[c]onsider[], inspect[], or reexamin[e]" the legal or factual merits of those orders. BLACK'S LAW DICTIONARY, *supra*, at 1434. Rather, each motion is addressed to the collateral

issue of whether misconduct affected the fairness of the proceedings and the integrity of the court.

*First*, a Rule 60(b)(3) motion asks the court to consider whether "fraud …, misrepresentation, or misconduct by an opposing party" warrants "relief … from a final judgment, order or proceeding." FED. R. CIV. P. 60(b)(3).  A court evaluating a Rule 60(b)(3) motion thus "consider[s], inspect[s], or reexamine[s]" the misconduct by which an order or judgment was procured, not the substance of that order or judgment.

This Court recognized as much in *Schultz v. Butcher*, 24 F.3d 626 (4th Cir. 1994).  In *Schultz*, the plaintiff wrongfully withheld evidence that would have supported the defendant's theory of the case, but the district court denied defendants' Rule 60(b)(3) motion on the ground that the undisclosed evidence "would not have altered the court's determination as to liability." *Id.* at 631.  This Court reversed, reiterating that a party's fraud or misconduct need not be "result altering" to justify relief under Rule 60(b)(3).  *Id.*  In so holding, this Court distinguished between the requirements for vacatur on account of misconduct under Rule 60(b)(3) and relief under Rule 60(b)(2) based on "newly discovered evidence":

> The "newly discovered evidence" provision of Rule 60(b)(2) is aimed at correcting *an erroneous judgment* stemming from the unobtainability of evidence.  Consequently, a party seeking a new trial under Rule 60(b)(2) must show that the missing evidence was "of

24

such a material and controlling nature as [would] probably [have] *change*[*d*] *the outcome*" … In contrast, Rule 60(b)(3) focuses *not on erroneous judgments as such*, but on judgments which were *unfairly procured*.

*Id.* (emphasis added) (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 n.10 (1st Cir. 1988)); *see also, e.g., Kissinger-Campbell v. C. Randall Harrell, M.D., P.A.*, 418 F. App'x 797, 805 (11th Cir. 2011) ("Rule 60(b)(3) 'is aimed at judgments which [a]re unfairly obtained, not at those which are factually [incorrect].'") (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978)); *Square Constr. Co. v. Wash. Metro. Area Transit Auth.*, 657 F.2d 68, 72 (4th Cir. 1981) (relief under Rule 60(b)(3) is justified not by the risk of erroneous judgments, but by "the policy of deterring misconduct which threatens the fairness and integrity of the fact finding process").

Put another way, *Schultz* held that a court considering a motion for vacatur under Rule 60(b)(3) need not address the merits of the order being attacked, and need only consider whether the non-moving party engaged in fraud or misconduct and whether that misconduct had a bearing on the fairness and integrity of the proceedings. Thus, a Rule 60(b)(3) motion like the one here does not pertain to the merits of the underlying order, and it accordingly does not ask the district court to "review[]" that order within the meaning of Section 1447(d).[2]

---

[2] While a handful of district courts in other Circuits have applied Section 1447(d) to preclude Rule 60(b)(3) motions, these decisions are not persuasive:

25

*Second*, vacatur of a remand order as a sanction likewise would not constitute "review[]" of that order within the meaning of Section 1447(d). Sanctions for misconduct are not addressed at the substance of a claim or judgment, but are instead intended "to deter future litigation abuse," *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998) (quoting *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990)), and in appropriate cases to "compensat[e] the victims of the [R]ule 11 violation," *Brubaker v. City of Richmond*, 943 F.2d 1363, 1374 (4th Cir. 1991) (quoting *Kunstler*, 914 F.2d at 522). Thus, a court's decision to sanction a party or counsel for misconduct does not reflect any assessment of the merits of the underlying litigation. *See, e.g., Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("[T]he imposition of a Rule 11 sanction is *not a judgment on the merits of an action*.") (emphasis added); *cf. Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 489 (9th Cir. 1991) (dismissing plaintiff's case as sanction for altering

---

None of them analyzed whether vacatur of a remand order due to fraud, misrepresentation or other misconduct entails "review[]" for purposes of Section 1447(d). *See South Shore Ranches, LLC v. Lakelands Co., LLC*, 2010 WL 1850172, at *1 (E.D. Cal. May 6, 2010) (denying Rule 60(b)(3) motion by noting only that Section 1447(d) prohibits "reconsideration by the district court") (quoting *Seedman v. U.S. Dist. Ct.*, 837 F.2d 413, 414 (9th Cir. 1988)); *Advanta Tech. Ltd. v. BP Nutrition, Inc.*, 2008 WL 4619708, at *2 (E.D. Mo. Oct. 16, 2008) (denying motions under Rules 60(b)(2) and 60(b)(3) without considering differences between the two grounds for relief); *Consolidated Doors, Inc. v. Mid-America Door Co.*, 120 F. Supp. 2d 759, 765 (E.D. Wis. 2000) (ruling that Section 1447(d) applies to "a court's reconsideration of its own remand order" without addressing whether vacatur on Rule 60(b)(3) grounds requires "review" of a remand order).

26

deposition transcripts, and noting that consequently "there is no need to reach the merits of [defendant's] motion for summary judgment").  Instead, as with Rule 60(b)(3) relief, the imposition of sanctions requires only "the determination of a collateral issue:  whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."  *Cooter & Gell*, 496 U.S. at 396.  And because determination of such a collateral issue does not involve any "review[]" of the underlying remand order, Section 1447(d) does not bar a sanctions motion seeking vacatur.

The district court thus erred in concluding that any vacatur of its Remand Orders would necessarily fall under the statute's proscription on "review[]" because it would require "reconsideration by the district court" of those orders. A1106; A1108 (both quoting *In re Lowe*, 102 F.3d at 734).  While a motion for reconsideration involves an evaluation of the correctness of the underlying order, *see, e.g.*, *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) ("Rule 59(e), in essence, gives the district court a chance to correct its own mistake if it believes one has been made."), as shown, a request for vacatur as either a sanction or pursuant to Rule 60(b)(3) based on misrepresentations and misconduct does not require a court to reconsider its earlier ruling or otherwise turn on the merits of the Remand Orders.  Thus, under a plain reading of the statute, the district court had jurisdiction to consider Colgate's requests to vacate the Remand Orders.

**B.    Congress's Purpose In Enacting Section 1447(d) Confirms That It Does Not Preclude Vacatur Of A Remand Order Due To Fraud Or Other Misconduct**

Nothing in the Section 1447(d)'s purpose or the legion of decisions interpreting that statute suggests that the text's plain meaning should be set aside and the statute extended to cover motions for vacatur on grounds of fraud and other misconduct.  As the Supreme Court has explained, Congress's intent in enacting Section 1447(d) and its predecessors was to "establish[] the policy of not permitting interruption of the litigation of the merits of a removed cause by prolonged litigation *of questions of jurisdiction of the district court* to which the cause is removed."  *United States v. Rice,* 327 U.S. 742, 751 (1946) (emphasis added); *see also Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 351 (1976) (purpose of Section 1447(d) is "to prevent delay in the trial of remanded cases by protracted litigation *of jurisdictional issues*") (emphasis added), *abrogated on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996).  The statute thus expresses Congress's determination that "avoiding delay in court proceedings caused by lengthy appellate review of remand decisions merits sacrificing appellate review *to correct occasional errors in remand orders*." *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 840 (3d Cir. 1991) (quoting Mark Herrmann, Thermtron *Revisited: When and How Federal Trial Court Remand Orders are Reviewable,* 19 ARIZ. ST. L.J. 395, 413 (1987-88)) (emphasis added).

28

That is, Section 1447(d) is intended only "to insulate from appellate review a district court's determinations as to its subject matter jurisdiction and compliance with remand procedures." *Tramonte*, 136 F.3d at 1027. A motion or an appeal raising issues collateral to these two restricted topics does not allege "error[] in [a] remand order," *In re TMI*, 940 F.2d at 840 (citation omitted), and thus does not implicate Congress's concerns in enacting Section 1447(d).

Numerous other decisions confirm that Section 1447(d) is a narrow provision, tailored specifically to Congress's limited purpose. *See, e.g.*, *Tramonte*, 136 F.3d at 1027 ("the dictates of § 1447(d) are not as absolutist as its language would imply"); *Baldridge v. Kentucky-Ohio Transp., Inc.*, 983 F.2d 1341, 1345 (6th Cir. 1993) (Section "1447(d)'s prohibition against appellate review is [in fact] fairly narrow."). For example, in *Thermtron*, the Court held that, despite the breadth of its literal terms, Section 1447(d) applies only to remand orders "issued pursuant to § 1447(c)," 423 U.S. at 343, which governs remand for lack of subject matter jurisdiction or defect in removal procedure, and thus it does not prohibit appellate review where the district court "remand[s] a case on grounds not specified in the statute," *id.* at 352. The Court acknowledged the seemingly unequivocal language in Section 1447(d), as well as the importance of "prevent[ing] delay in the trial of remanded cases by protracted litigation of jurisdictional issues," but nonetheless concluded that the statute should not be

construed "so woodenly" as to prohibit appellate review where a district court orders a remand without statutory authorization. *Id.* at 351-52.

Since *Thermtron*, the Supreme Court has repeatedly recognized the limited nature of Section 1447(d), holding again and again that it does not preclude review of even those remand orders that would appear to fall within its literal terms. In *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009), the Court permitted appellate review of a district court's order declining to exercise supplemental jurisdiction, because the remand order "was not based on a jurisdictional defect but on its discretionary choice not to hear the claims despite its subject-matter jurisdiction over them." *Id.* at 640. Similarly, in *Quackenbush*, the Court held that Section 1447(d) does not bar review of a remand order based on *Burford* abstention, for such a remand is not based on a ground specified in Section 1447(c). 517 U.S. at 711.

The lower courts have followed suit. In *Foster v. Chesapeake Insurance Co.*, 933 F.2d 1207 (3d Cir. 1991), the Third Circuit held that a remand based on a forum selection clause was reviewable because the appeal concerned questions of contract interpretation, not jurisdiction. *See id.* at 1211; *see also Clorox Co. v. U.S. Dist. Court for N. Dist. of Cal.*, 779 F.2d 517, 520 (9th Cir. 1985) (permitting appellate review of remand order based on waiver of the right to remove). Soon thereafter, in *In re TMI*, 940 F.2d 832, the Third Circuit also found appellate

jurisdiction over a remand order that *was* in fact based on subject-matter jurisdiction: The district court had remanded a case to state court on the ground that the statute purporting to create federal jurisdiction was unconstitutional. *Id.* at 837. The Third Circuit held that Section 1447(d) did not bar review of the remand order, concluding that Congress could not have intended to bar appellate review of decisions invalidating a jurisdictional statute—an issue distinct from whether the statutes as written appear to confer jurisdiction: "Such constitutional determinations could not have been intended by Congress to fall within the category of routine subject matter jurisdiction determinations contemplated by section 1447(c) and, consequently, are not immune from review under section 1447(d)." *Id.* at 848.

These decisions make clear that Section 1447(d) bars relief from a remand order only if sought as a means of correcting an error in the district court's determination of its jurisdiction. Colgate's motions do not seek relief on such a basis, but rather seek to allow Colgate a fair adjudication, on a full record untainted by fraud and misconduct. The issues presented in Colgate's motions bear on the proper functioning of the courts themselves—the protection of which Congress cannot have meant to foreclose by enacting its narrow prohibition on "review[]" of the merits of a remand order. Section 1447(d) thus poses no impediment to their

consideration, and the district court's orders denying Colgate's motions for sanctions and for Rule 60(b)(3) relief should at minimum be vacated.

## II.    THIS COURT SHOULD REMAND WITH INSTRUCTIONS TO VACATE THE REMAND ORDERS IN LIGHT OF PLAINTIFFS' FRAUDULENT MISREPRESENTATIONS

For the reasons stated above, this Court should *at minimum* vacate the district court's orders and remand the cases for consideration of the merits of Colgate's requests to vacate the Remand Orders as either a sanction or pursuant to Rule 60(b)(3).  But this Court should go further by reversing the denial of sanctions and Rule 60(b)(3) relief outright, and thus remanding the cases with instructions to vacate the Remand Orders and to reinstate the removed actions in the district court.

A court of appeals may consider and decide issues not determined by the district court where further factual development is unnecessary and thus a remand would only "entail further delay." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1172-73 & n.3 (6th Cir. 1983) (determining issue on which district court had not passed because it erroneously concluded that it lacked jurisdiction); *see also, e.g.*, *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001) (balancing abstention factors in first instance where district court did not reach issue); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1310 (9th Cir. 1990) (recalculating damages rather than remanding for recalculation); *United*

*States v. Criden*, 681 F.2d 919, 922 (3d Cir. 1982) (determining discretionary issue concerning scope of public access to trial that district court had not addressed); *Buckley v. Littell*, 539 F.2d 882, 897 (2d Cir. 1976) (determining appropriate reduction in punitive damages on appeal).

In particular, a case need not be remanded to the district court for consideration of ordinarily discretionary issues where, as here, a proper exercise of discretion could lead to only one outcome. *See, e.g.*, *United States v. Fenner*, 147 F.3d 360, 363 (4th Cir. 1998) ("[W]e need not remand to permit the district court to exercise its discretion to depart [from the sentencing range] if its decision to do so on remand would constitute an abuse of discretion."); *Schultz*, 24 F.3d at 630-31 (holding that district court applied the wrong standard in denying Rule 60(b) motion, and reversing decision rather than remanding for consideration under the correct test); *Summers v. Howard Univ.*, 374 F.3d 1188, 1194-95 (D.C. Cir. 2004) (declining to remand to allow district court to exercise its discretion where any decision other than that reached by court of appeals would have been an abuse of discretion); *Al-Fayed v. C.I.A.*, 254 F.3d 300, 309 n.10 (D.C. Cir. 2001) ("[T]his case is so clear that, even reviewed deferentially, any other conclusion would constitute an abuse of discretion. Hence, there is no reason to remand the case for redetermination by the district court.").

Here, the terms of the district court's order make clear that remand would be an unnecessary and wasteful step.  There are no material factual disputes, and the district court has already signaled its conclusion that counsel's conduct is not sanctionable and thus not a ground for relief (A1106; A1108).  As explained below, that conclusion is legally erroneous and would be an abuse of discretion were the district court to adopt it on remand.  Returning the case to the district court simply to allow it an opportunity to repeat its mistaken application of the law to the undisputed facts would serve no meaningful purpose, and would merely engender unnecessary delay and undue expense by forcing the parties to continue litigating in both state and federal court while awaiting a final decision in the district court and the outcome of a possible second appeal—all with an impending state-court trial.

## A.    The Remand Orders Should Be Vacated Pursuant To Rule 60(b)(3)

The Court should direct the district court to vacate the Remand Orders pursuant to Rule 60(b)(3), which provides that a "court may relieve a party … from a final judgment, order, or proceeding" on account of "fraud…, misrepresentation, or misconduct by an opposing party."  FED. R. CIV. P. 60(b)(3).  To obtain relief under this rule, a party must establish that the nonmoving party committed clear misconduct, which "prevented the moving party from fully presenting its case" on a potentially "meritorious [claim or] defense" in the trial court.  *Schultz*, 24 F.3d at

34

630 (citing *Square Constr.*, 657 F.2d at 71). As discussed, the focus of the inquiry is "not on erroneous judgments as such, but on judgments which were unfairly procured," and therefore the non-movant's fraud or misconduct need not be "result altering" to justify relief. *Id.* at 631 (quoting *Anderson*, 862 F.2d at 924 n.10).[3] The misconduct also need not be intentional to warrant relief, though a party's (or her counsel's) bad faith bears on how the court balances "the competing policies favoring the finality of judgments and justice being done in view of all the facts" in order to determine whether relief is warranted. *See id.* at 630 (quoting *Square Constr.*, 657 F.2d at 71).

Applying this standard, courts frequently hold that Rule 60(b)(3) relief is warranted, even at the expense of vacating a judgment rendered after trial, where one party has concealed or misrepresented facts relevant to the case. For instance, in *Schultz*, this Court held that the district court had abused its discretion by denying Rule 60(b)(3) relief where the plaintiff had failed to produce a relevant document in discovery. The document (a Coast Guard report) would have assisted

---

[3] Because a misstatement or nondisclosure need not be "result altering," *Schultz*, 24 F.3d at 631, the requirement that the movant have a "meritorious" claim or defense, *id.* at 630, does not demand proof at the Rule 60(b)(3) stage that the underlying claim would have been successful but for the misconduct. It is sufficient for the party seeking vacatur to show that he *could* have prevailed but that the misconduct prevented him from putting on his best case. *See, e.g., id.* at 631. The merits of the underlying motion need not be determined along with the motion to vacate the judgment or order.

the defendant cruise ship operator to make its case that another party was responsible for the plaintiff's injuries, and the failure to produce the report (even if unintentional) was enough to constitute "misconduct" under the Rule. *Schultz*, 24 F.3d at 630. This Court further concluded that although finality is an "important consideration," it was outweighed by "the fairness and integrity of the fact finding process." *Id.* at 631.

Similarly, in *Green v. Foley*, 856 F.2d 660 (4th Cir. 1988), the plaintiff misrepresented in his pleadings that he was a *bona fide* purchaser of the notes on which he demanded payment, thereby obscuring the guarantor defendant's meritorious defense that the notes had been paid. *See id.* at 666. This Court held that the district court had abused its discretion in denying Rule 60(b)(3) relief, concluding that "the policy of deterring misconduct which threatens the fairness and integrity of the fact finding process must outweigh considerations of finality…. Any other result would reward [plaintiff's] wrongful acts by permitting him to retain the benefit of those acts, at [defendant's] expense and in derogation of the proper function of the federal courts." *Id.* at 667 (citation and internal quotation marks omitted).[4]

---

[4]    *See also, e.g.*, *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1205-06 (Fed. Cir. 2005) (patent plaintiff's failure to disclose he had assigned patent-in-suit to a third party); *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897-98 (7th Cir. 1995) (alteration of evidence submitted at trial); *Square Constr.*, 657 F.2d at 71 (failure to disclose documentary evidence that would have supported

The circumstances here satisfy the requirements for Rule 60(b)(3) relief, and the same considerations that motivated this Court in *Green* necessitate vacatur of the Remand Orders here. *First*, it is beyond serious question that Plaintiffs' counsel committed "misconduct" within the meaning of Rule 60(b)(3). Counsel insisted to two separate U.S. district judges that Plaintiffs were making a *bona fide* pursuit of their claims against the Maryland defendants. With respect to Barlow, counsel advised Judge Nickerson that "there is some circumstantial evidence to suggest that [she] could possibly have been exposed to asbestos-containing products while working at RMR Corporation," a non-party. A106. Counsel similarly represented to Judge Quarles that there is "circumstantial evidence" to support a conclusion that Mosko was exposed to asbestos supplied by Walter E. Campbell Co. A256-57. With those representations, counsel sought to convince the district court that Plaintiffs were making a *bona fide* pursuit of a Maryland defendant. *See* A256; A114. Both judges relied on counsel's representations in finding a possibility of recovery sufficient to defeat Colgate's fraudulent joinder argument. A358-59; A367-68.

These representations were false and misleading, as Plaintiffs' counsel immediately demonstrated upon returning to state court. Seeking to consolidate

---

defense's theory); *Rozier*, 573 F.2d at 1346 (defendant "completely sabotaged the federal trial machinery" by failing to disclose report that would have supported theory that plaintiff did not press at trial).

Plaintiffs' claims with other Cashmere Bouquet cases, counsel advised the Baltimore court that "there is ***absolutely no evidence*** to indicate ***or even suggest***" that any party other than Colgate is responsible for Plaintiffs' injuries. A863 (emphasis added). Counsel agreed with the state-court judge that this is a "***one-defendant case***" involving only Colgate, and thus disclaimed *any* intention to develop evidence in discovery against, or otherwise to pursue, any party other than Colgate. A494 (emphasis added). These representations in state court are irreconcilable with Plaintiffs' position in the district court.

Just as importantly, it is clear from Plaintiffs' litigation strategy in state court that their representations in that forum (which are consistent with Plaintiffs' pre-removal discovery responses) demonstrate the truth of the matter: Plaintiffs had no good-faith intention to pursue recovery from any of the Maryland defendants. Indeed, counsel candidly admitted as much in state court by agreeing that Plaintiffs' district-court arguments were developed only to avoid federal jurisdiction.

> THE COURT: So once the case came back here, the glimmer disappeared?…
>
> MR. KELLY: The glimmer is in federal court.

A495. Counsel misrepresented, obfuscated, and concealed relevant facts in the district court in a bad-faith bid to avoid the federal forum to which Colgate is

entitled.   This conduct amply satisfies the "misconduct" requirement of Rule 60(b)(3).  *See Schultz*, 24 F.3d at 630; *Green*, 856 F.2d at 666-67.

*Second*, Plaintiffs' counsel's misconduct prevented Colgate from fully presenting its meritorious arguments in favor of federal jurisdiction.  *See Schultz*, 24 F.3d at 630.  Colgate's theory of federal jurisdiction is that there is complete diversity between Colgate (a citizen of New York and Delaware) and each Plaintiff (citizens of Maryland and Florida, respectively), and that the Maryland defendants named in Plaintiffs' complaints were fraudulently joined and are therefore irrelevant for jurisdictional purposes.  "To show fraudulent joinder, the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'"  *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir. 1993)); *see also AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (describing doctrine as asking whether plaintiff has "no real intention to get a joint judgment, and … no colorable ground for so claiming") (citations, internal quotation marks, and brackets omitted).

In responding to the remand motions, Colgate did not yet have proof that the Maryland defendants had been joined solely in a bad-faith effort to defeat

jurisdiction, with no intent actually to pursue the claims. Colgate therefore argued to the district court that neither Plaintiff had a possibility of recovery against the Maryland defendants because neither had a viable claim against those defendants. Both district judges found this argument "objectively reasonable" even as presented on the facts of which Colgate was then aware. A360 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)); A368-69. The argument failed only because the district judges applied a generous standard under which Plaintiffs' mere "glimmer of hope" of success against an in-state defendant is sufficient to defeat a claim of fraudulent joinder. *See* A358; A368 (both quoting *Hartley*, 187 F.3d at 426).

But had Plaintiffs admitted in the district court that they had developed no evidence "*even* [*to*] *suggest*" that they could recover against the Maryland defendants (A863 (emphasis added)), and that this is thus a "one-defendant case" (A494), Colgate would have had a far stronger case for defeating the remand motion. Indeed, had Plaintiffs disclosed that their "glimmer of hope" was an illusion conjured only as an expedient to avoid federal jurisdiction, and that it would vanish immediately upon return to state court, Colgate would have been able to argue that each Plaintiff's case against the in-state defendants should be discounted for jurisdictional purposes. These facts alone are sufficient to warrant Rule 60(b)(3) relief: By misrepresenting the state of the evidence that Plaintiffs

had developed, counsel prevented Colgate from presenting the district court with the best factual support for its claim of jurisdiction, and thus rendered the district court's decision not only unreliable but unfair—precisely the scenario that Rule 60(b)(3) is intended to address. *See Schultz*, 24 F.3d at 631.

In addition, counsel's obfuscation of the fact that Plaintiffs had no intention to pursue any in-state defendant prevented Colgate from pressing the additional argument that the fraudulent-joinder doctrine applies because Plaintiffs had no intention of obtaining a judgment against the Maryland defendants. The essence of the fraudulent-joinder inquiry has for at least a century been "whether there was a real intention to get a joint judgment [against the nondiverse defendants] and whether there was a colorable ground for it shown as the record stood" at the time of removal. *Chi., Rock Island & Pac. Ry. Co. v. Schwyhart*, 227 U.S. 184, 194 (1913) (Holmes, J.).[5] But because Plaintiffs' counsel failed to disclose to the

---

[5] *See also, e.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 92 (2005) (noting that "diverse defendants, upon showing that joinder of nondiverse party was 'without right and made in bad faith,' may successfully remove the action to federal court") (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 575 (5th Cir. 2004) (*en banc*) (citing *Cockrell* and holding that removing defendant's burden is "to show that sham defendants were added to defeat jurisdiction"); *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) ("joinder is fraudulent if there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, ***or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment***") (emphasis added; citation and internal quotation marks omitted); *AIDS Counseling*, 903 F.2d at 1003; *Faulk v. Husqvarna Consumer Outdoor Prods. N.A.*, 849 F. Supp. 2d 1327, 1330 (M.D. Ala. 2012) (sustaining diversity

41

district court that Plaintiffs had no intention to seek judgments against the Maryland defendants, Colgate could not effectively argue that removal was warranted on this additional ground. Plaintiffs' true purposes became clear only on remand in state court: This is a "one-defendant case" in which there is no "glimmer of hope" that Plaintiffs will recover against the Maryland defendants because Plaintiffs have no intention to pursue claims against those defendants. A494-95. If Plaintiffs had disclosed these facts about their litigation plans to the district court, rather than representing to the contrary, Colgate would have been able to present a powerful argument that their determination not to seek judgment against any of the Maryland defendants renders those parties' joinder fraudulent. By hiding their intentions, Plaintiffs "prevented [Colgate] from fully presenting its case" to the district court, and thereby opened the Remand Orders to vacatur under Rule 60(b)(3). *See Schultz*, 24 F.3d at 630.

*Third*, the balance of equities and the need to protect the courts' integrity weigh heavily in favor of Rule 60(b)(3) relief. The circumstances are clear: Plaintiffs deliberately manipulated the facts and obfuscated their own intentions to avoid federal jurisdiction. They claimed to have evidence in support of genuine claims, only promptly to abandon those claims upon remand. The district court

---

jurisdiction where plaintiff "lack[ed] a good faith intention to pursue his claims against" nondiverse defendant).

was entitled to make its remand decision with a complete factual picture, and counsel's misrepresentations and obfuscations prevented it from doing so.

Such conduct "threatens the fairness and integrity of the fact finding process," and the need to rectify the situation and to deter future misconduct "must outweigh considerations of finality," *Green*, 856 F.2d at 666—particularly given that there is no final judgment in these cases. Basic considerations of fairness and equity, and the need to protect the judicial process from deception and unfair manipulation, necessitate vacatur under Rule 60(b)(3). Any other resolution of Colgate's request for relief would be an abuse of discretion, for "[a]ny other result would reward [plaintiff's] wrongful acts by permitting him to retain the benefit of those acts, at [defendant's] expense and in derogation of the proper function of the federal courts." *Id.* at 667. This Court should remand these cases with instructions to vacate the Remand Orders.

## B.    The Remand Orders Should Be Vacated As A Sanction Pursuant To Rule 11 Or The Courts' Inherent Authority

Even if relief from the Remand Orders were not available under Rule 60(b)(3), vacatur would still be warranted as a sanction under either Rule 11 or the courts' own authority to punish and deter counsel's wrongful conduct in the district court. Either source authorizes the court to take action against Plaintiffs' counsel's misrepresentations and other violations of her duty of candor towards the tribunal,

and the only effective sanction for such misconduct is to vacate the orders it was employed to procure.

### 1.    Plaintiffs' Counsel's Misconduct Warrants Sanctions

Rule 11 authorizes the court to order sanctions where a party submits a paper that violates the requirement that its "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(3), (c)(1). The federal courts similarly have their own inherent, residual authority to impose sanctions to punish and deter fraud and other misconduct effected against the court where no specific rule or statute is directly applicable. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). Among the conduct susceptible of inherent-power sanctions is a party's (or her attorney's) bad-faith violation of the "general duty of candor and truth" before a tribunal, including by failing to advise the court of material facts of which the court and opposing party are unaware. *See, e.g.*, *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 458-59 (4th Cir. 1993) (citing *Tiverton Bd. of License Comm'rs v. Pastore,* 469 U.S. 238 (1985) (per curiam)). Exercise of this power is justified by "the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." *Silvestri*, 271 F.3d at 590. Where an act of bad faith

44

does not fit cleanly into one box or another, or where "conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address," the court is justified in addressing the whole of the misconduct under its inherent power. *Chambers*, 501 U.S. at 50-51.

Sanctions are warranted in this case to deter future bad-faith jurisdictional manipulation. The district court correctly recognized the "sharp conflict" between Plaintiffs' counsel's representations in that forum and in the Baltimore court. A1106; A1108. And as explained above, counsel actively cultivated the impression that Plaintiffs' claims against in-state defendants were legitimate, good-faith attempts to secure judgment, and then repudiated that very notion just as soon as it was to their advantage to do so. Neither this Court nor the district court should countenance such brazen jurisdictional manipulation; it would be an abuse of discretion not to order sanctions for Plaintiffs' counsel's behavior here. *See, e.g.*, *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 928 (7th Cir. 2004) (sanctions warranted where plaintiff's counsel acted intentionally "to deceive the court as to the existence of venue").

The district court's contrary conclusion—that sanctions were unavailable because counsel's conflicting statements "are attributable to different attorneys in markedly different litigation contexts" (A1106; A1108)—is based on clear errors of law. *First*, it is immaterial that one member of the law firm representing

45

Plaintiffs (Jennifer Lilly) signed the briefs in the district court, while another member of that same firm (Thomas Kelly) appeared in the Baltimore courtroom. Rule 11 specifically provides that "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee," FED. R. CIV. P. 11(c)(1), and the advisory committee's notes make clear that a firm is "ordinarily … viewed as jointly responsible [for its attorneys' acts] under established principles of agency," *id.*, advisory committee's note (1993); *see also, e.g.*, *Morris v. Wachovia Secs., Inc.*, 2007 WL 2126344, at \*5 (E.D. Va. July 20, 2007) (observing that "if a firm's liability for its lawyers' Rule 11 violations is not absolute, it is very nearly so"). Moreover, both lawyers appeared in court (whether physically or through paper filings) on behalf of both Mosko and Barlow, and their statements are therefore binding on Plaintiffs. *See, e.g.*, *Salisbury Beauty Sch. v. State Bd. of Cosmetologists*, 300 A.2d 367, 376 (Md. 1973) ("The actions of an attorney within the scope of his employment are binding upon his client under the ordinary principles of agency. This is particularly true concerning the stipulation of counsel in open court.") (citations omitted); *Ali v. CIT Tech. Fin. Servs., Inc.*, 981 A.2d 759, 776 (Md. Ct. Spec. App. 2009) ("A client is bound by the admissions of his attorney of record in the case."). It is irrelevant that different attorneys were directly responsible for making the two sets of

conflicting statements, because both Plaintiffs are bound by both attorneys' actions.

*Second*, it is no defense to say that counsel's representations were made in "different litigation contexts." A1106; A1108. For one thing, the integrity of the judicial process demands that a party to litigation not be left free to change her position every time her interests change. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)); *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (doctrine of judicial estoppel "is designed to prevent a party from 'playing fast and loose' with the courts and [to] 'protect the essential integrity of the judicial process'") (citation omitted). Parties are thus "prohibit[ed] … from deliberately changing positions according to the exigencies of the moment," lest they be permitted to make "improper use of judicial machinery." *New Hampshire*, 532 U.S. at 750 (citations omitted).

In any event, the district court erred in treating the circumstances here as merely a series of inconsistent statements that can be explained away as having

come from different speakers in different contexts.  The problem with counsel's conduct is not simply the adoption of contradictory litigation positions, but rather that one set of statements—those made to the district court—was factually false and made in an attempt to avoid federal jurisdiction.  Counsel's representations in state court are relevant only because they demonstrate that the representations to the district court were false and therefore sanctionable.  *See, e.g.*, *Shaffer*, 11 F.3d 450; *Jenkins v. Methodist Hosps. of Dall., Inc.*, 478 F.3d 255, 265 (5th Cir. 2007).  The district court committed legal error and thus abused its discretion by failing to recognize that a statement's falsity is the salient issue, and further abused its discretion by failing to sanction Plaintiffs' counsel's abuse of the legal system.

## 2.     Vacatur Of The Remand Orders Is The Appropriate Sanction

Where sanctions are necessary in response to a party's fraud upon the court, an appropriate sanction is to vacate the improperly procured judgment or order (here, the Remand Orders).  As the Supreme Court explained in *Chambers*:

> [T]he inherent power … allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. This "historic power of equity to set aside fraudulently begotten judgments' is necessary to the integrity of the courts, for 'tampering with the administration of justice ... involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public."

501 U.S. at 44 (citations omitted).  Rule 11(c) likewise affords the court wide authority to prescribe "appropriate sanctions," including "nonmonetary directives"

up to and including dismissing an action outright. *See, e.g.*, *Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) ("[I]t is proper for the trial court to impose a severe sanction where the sanction is sufficient to deter repetition of the misconduct or to deter similar conduct by third parties."); *Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993); *Peerless Indus. Paint Coatings Co. v. Canam Steel Corp.*, 979 F.2d 685, 687 (8th Cir. 1992) ("[F]raud on the court is grounds for dismissal with prejudice."); FED. R. CIV. P. 11 advisory committee's note (1993) (noting "the court's power to impose sanctions or remedial orders…, such as dismissal of a claim [or] preclusion of a defense").

Here, vacatur of the Remand Orders is the only sanction that would suffice to remedy Plaintiffs' counsel's misconduct and to deter future similar misconduct. Those orders were procured by Plaintiffs' counsel's misleading, incomplete, and bad-faith representations to the district court regarding Plaintiffs' intent and ability to pursue in-state defendants. Failing to vacate the Remand Orders would thus permit Plaintiffs to benefit from their counsel's wrongdoing, depriving Colgate of the federal forum to which it is entitled and encouraging future plaintiffs to employ both the fraudulent joinder device and fraudulent briefing to support it. This Court should not permit such machinations, and should therefore remand this case to the

district court with instructions to enter sanctions against Plaintiffs in the form of an order vacating the Remand Orders.

## **CONCLUSION**

The June 26, 2013 orders should be reversed, and the cases should be remanded with instructions to vacate the Remand Orders.  In the alternative, the June 26, 2013 orders should be vacated and the cases should be remanded for further proceedings on Colgate's motions for sanctions and for Rule 60(b)(3) relief.

## **STATEMENT WITH RESPECT TO ORAL ARGUMENT**

Colgate respectfully requests oral argument in these consolidated appeals that raise an issue of first impression.

DATED:  July 17, 2013                            Respectfully submitted,


                                                 s/ Faith E. Gay_____
                                                 Faith E. Gay
Thomas P. Bernier                                William B. Adams
SEGAL MCCAMBRIDGE                                QUINN EMANUEL URQUHART
  SINGER & MAHONEY                                 & SULLIVAN, LLP
One North Charles Street                         51 Madison Avenue, 22nd Floor
Suite 2500                                       New York, NY  10010
Baltimore, MD 21201                              (212) 849-7000
(410) 779-3960

*Attorneys for Defendant-Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

This brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B) because it contains 11,797 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman.


<u>s/ Faith E. Gay                               </u>                    <u>July 17, 2013</u>
*Attorney for Defendant-Appellant*                    Date

51

## **CERTIFICATE OF SERVICE**

I, Faith E. Gay, a member of the Bar of this Court, hereby certify that on July 17, 2013, I caused to be electronically filed the foregoing "Brief of Defendant-Appellant Colgate-Palmolive Company" and Joint Appendix with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Faith E. Gay_____