IN THE

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

---

JOYCE BARLOW,

*Plaintiff-Appellee,*

*v.*

COLGATE-PALMOLIVE COMPANY

*Defendant-Appellant,*

*and*

JOHN CRANE-HOUDAILLE, INCORPORATED, *et al.*

*Defendants.*

---

CLARA G. MOSKO,

*Plaintiff-Appellee,*

*v.*

COLGATE-PALMOLIVE COMPANY

*Defendant-Appellant,*

*and*

JOHN CRANE-HOUDAILLE, INCORPORATED, *et al.*

*Defendants.*

---

*On Appeal from the United States District Court
for the District of Maryland (Baltimore)*

---

# APPELLEES' BRIEF IN OPPOSITION

---

Jennifer L. Lilly, Esquire
LAW OFFICES OF PETER G. ANGELOS
100 North Charles Street
Suite 2100
Baltimore, MD 21201
(410) 649-2124

*Attorneys for Plaintiffs-Appellees
Joyce Barlow and Clara G. Mosko*

## **CORPORATE DISCLOSURE**

Pursuant to Rule 26.1(a) of Fourth Circuit Local Rule 26.1(a), Plaintiffs Clara Mosko and Joyce Barlow state that no publicly-held corporation or trade association has a direct financial interest in the outcome of this litigation by reason of a franchise, lease, other profit sharing agreement, insurance or indemnity agreement.

TABLE OF CONTENTS

TABLE OF CITATIONS                                                    ii, iii

FEDERAL RULES AND STATUTES                                            iv

FACTUAL AND PROCEDURAL BACKGROUND                                     1

    A.    The Underlying Lawsuits                             1
    B.    The Removals                                       3
    C.    The Proceedings After Remand                       7
    D.    The Sanctions Proceedings                          17

SUMMARY OF THE ARGUMENT                                               21

STANDARD OF REVIEW                                                    22

    I.    The District Court Did Not Abuse Its Discretion In
        Finding That There Was No Misconduct On The
        Part of Plaintiff's Counsel During The Remand
        Proceedings                                        23

        A.    Plaintiff's Motions For Remand Were Grounded
            Squarely In Black Letter Law                 27

        B.    Plaintiffs Provided Evidentiary Support For The
            Representations Made In Their Motions For
            Remand                                       33

    II.    The District Court Did Not Abuse Its Discretion In Denying
        Colgate's Request That The Mosko and Barlow Remand
        Orders Be Vacated                                  45

    III.    Colgate's Request That This Court Overstep The Province
        Of The District Court And Rule On The Merits Of Its
        Motion For Rule 60(B)(3) Is Not Appropriate        54

CONCLUSION                                                            58

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)                             58

CERTIFICATE OF SERVICE                                                59

# TABLE OF CITATIONS

| CASES | PAGE |
|---|---|
| Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279, 1288 (11th Cir. 1999) | 53 |
| Bendy v. C.B. Fleet Co., 2011 WL 1161733 (D. Md. 2011) | 31 |
| Browning v. Navarro, 743 F.2d 1069, 1079-1080, fn. 29 (5th Cir. 1984) | 50 |
| Brubaker v. City of Richmond, 943 F.2d 1363, 1381-1382 (4th Cir. 1991) | 26, 27 |
| Central Operating Co. V. Utility Workers of America, 491 F.2d 245 (4th Cir. 1974) | 49, 57 |
| City of Waco v. United Stated Fidelity & Guar. Corp., 293 U.S. 140, 143, 55 S.Ct. 6, 7, 79 L.Ed. 244 (1934) | 53 |
| Cleveland Demolition Co., Inc. V. Azcon Scrap Corp., 827 F.2d 984 (4th Cir., 1987) | 27 |
| Consolidated Masonry & Fireproofing, Inc. V. Wagman Construction Corp., 383 F.2d 249 (4th Cir. 1967) | 22, 56, 57 |
| Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) | 31 |
| Hunt v. Acromed Corp., 961 F.2d 1079 (3rd Cir. 1992) | 50 |
| In re LaProvidencia Development Corp., 406 F.2d 251, 252-253 (1st Cir. 1996) | 47, 48 |
| In re Lowe, 102 F.3d 731, 735 (4th Cir. 1996) | 47 |
| In re Pennsylvania Co., 137 U.S. 451, 454, 11 S.Ct. 141, 142, 34 L.Ed. 738 (1890) | 47 |
| Kirby v. Allegheny Beverage Corp., 811 F.2d 253 (4th Cir. 1987) | 26 |
| Mayes v. Rappoport, 198 F.3d 457 (4th Cir. 1999) | 31 |

CASES                                                              PAGE

McLawhorn v. John W. Daniel & Co., Inc., 924 F.2d 535, 538
    (4th Cir. 1991)                                          57

New Orleans Public Service, Inc. V. Majoue, 802 F.2d 166 (5th Cir. 1986)   50

Riverdale Baptist Church v. Certainteed Corp., 349 F.Supp. 2d 943, 948
    (D. Md. 2004)                                          31, 32

Seedman v. U.S. District Court for the Central District of California,
    837 F.2d 413 (9th Cir. 1988)                           49, 51

Shamrock Oil & Gas Co. v. Sheets, 313 U.S. 100 (1941)                52

Skevofilax v. Aventis Pasteur, Inc., 304 F. Supp. 2d 691, 693, fn.3
    D. Md. 2003)                                             31

Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336 (1976)         51, 52

Thomas v. Treasury Management Assoc., Inc., 158 f.r.d. 364 (D. Md. 1994)   26

Three J Farms, Inc. V. Alton Box Board Co., 609 F.2d 112, 115-116
    (4th Cir. 1979)                                        47, 48, 52

Tramonte v. Chrysler Corp., 136 F.3d 1025 (5th Cir. 1998)            53

United States v. Rice, 327 U.S. 742, 751, 66 S.Ct. 835, 839,
    90 L.Ed. 982 (1946)                                      47

Vasura v. ACandS, 84 F.Supp. 2d 531 (S.D. NY 2000)                   32

## FEDERAL RULES AND STATUTES

28 U.S.C. §1447                                     *passim*

FRCP Rule 11                                      *passim*

FRCP Rule 60                                      *passim*

Local Rule 105.8(b)                                18

## FACTUAL AND PROCEDURAL BACKGROUND

Since the underlying facts of this case are so complex, a comprehensive review of the events that have occurred in these proceedings is necessary for the disposition of this appeal. Not surprisingly, and staying true to its commitment to misdirection and confusion that has been its tactic throughout these proceedings, Colgate-Palmolive Company (hereinafter, "Colgate") has presented its issues on appeal without any regard to what actually transpired in the trial courts below. A full factual account of the underlying proceedings is thus required.

A.    The Underlying Lawsuits

At the core of these proceedings are two civil actions filed in the Circuit Court for Baltimore City by Ms. Clara Mosko (hereinafter, "Mosko") and Ms. Joyce Barlow (hereinafter, "Barlow"), two women who were diagnosed with mesothelioma. The suits were filed on October 26, 2011 and August 31, 2011, respectively. (A. 56-69, 47-55.) Both lawsuits sought damages for the women's injuries and were filed against various defendants that participated in the asbestos trade. In each case, the plaintiffs have a history of using a beauty powder called Cashmere Bouquet, a product manufactured by Colgate-Palmolive Company. One of the bases of liability in the Mosko and Barlow cases when they were originally

filed was that Cashmere Bouquet contained asbestos and could be a cause of the plaintiffs' mesothelioma.

However, the plaintiffs' past use of Cashmere Bouquet was not the only potential source of liability in either case. Because neither of the women were involved in the construction trade, their suits were filed based upon the theory that the two women were exposed at one of their places of work by construction that occurred during the course of their employment, or within their homes, by virtue of second hand asbestos exposure from their husbands or in-home improvement projects. Accordingly, multiple Maryland defendants were named in the suits, since construction based asbestos claims inevitably involve the application of asbestos-containing products by local contractors hired to install different types of asbestos products.

In any claim for mesothelioma, the taking of the deposition of the plaintiff is prioritized because there is no guarantee that the claimant will live to see trial. Accordingly, both plaintiffs produced medical records and filed answers to certain interrogatories in preparation of deposition in order to preserve their testimony and give the defendants an opportunity to question them. Mosko's deposition took place on May 29, 2012 (A. 270.), and Barlow's deposition took place on June 12, 2012. (A. 121, 271.) Both depositions were taken before any other discovery had

taken place in either case. It has never been disputed that neither Barlow nor Mosko were able to independently identify any other potential exposures to asbestos during their depositions.

B.    The Removals

The Mosko and Barlow actions were removed to federal court by Colgate on June 15, 2012. (A. 27, A. 36.) Colgate's claim for federal jurisdiction was grounded in diversity jurisdiction. Specifically, Colgate contended that the named Maryland defendants were fraudulently joined because neither Mosko nor Barlow could identify in their interrogatories or their depositions any other exposures to asbestos-containing products other than their exposures to Cashmere Bouquet. At the time of the removals, the Mosko and Barlow cases had been consolidated into one trial group with two other women: Ms. Kristi Lescalleet and Ms. Marguerite Wolf, with the Honorable John Glynn presiding. (A. 748-752.) By virtue of Colgate's removals, Mosko and Barlow were severed from their trial group.

Colgate's sole basis for asserting fraudulent joinder was based upon the fact that neither Mosko nor Barlow could testify in deposition about any other exposure to asbestos other than the Cashmere Bouquet exposures. Specifically, Colgate alleged in its Notices of Removal that the fact that neither Mosko nor Barlow could point to any potential exposures to asbestos in their depositions and interrogatories

attributable to a Maryland defendant showed that they had no intent to pursue a claim against a Maryland defendant. (A. 30-31, 40.) Colgate further alleged that the lack of identification of a Maryland defendant by the Plaintiffs allowed for removal under the fraudulent joinder doctrine. (Id.)

Plaintiffs filed Motions for Remand in both the Mosko and Barlow cases on July 16, 2012. (A. 94, 244.) It is the contention of Colgate in this proceeding that the supposed fraud on the district court for which Colgate seeks redress in the form of vacating the remand orders in the Mosko and Barlow cases occurred during the remand proceedings. In particular, Colgate contends that misrepresentations were made to the district court judges assigned to the Barlow and Mosko cases. The statements in question are attributable to two attorneys who work for the Law Offices of Peter G. Angelos. Jennifer L. Lilly, Esq., handled the remand proceedings for both Mosko and Barlow. In Motions for Remand filed on behalf of both women, it was argued that the inability of Mosko and Barlow to independently recall a particular product did not foreclose the possibility that a claim could be established. (A. 94-119, 244-269.) This argument was based upon well-established case law and a long standing federal standard that placed an exceedingly heavy burden on removing defendants.

4

The Motions for Remand were bolstered with factual representations and substantiated with evidence placed upon the record. In Mosko's case, it was noted that she testified in deposition that she worked at the Department of Agriculture Building from 1966 to 1994, which was frequently being renovated and recalled certain specific remodeling that she witnessed during her career at that Department, including the installation of new ceilings and the construction of a new subbasement. (A. 276, 277.) She also specifically recalled that a cafeteria was built in the new subbasement. (A. 276.) When asked if she believed she was exposed to asbestos in the building, Mosko responded that she wasn't aware of any exposures at the location. (A. 282, 283.) She further testified that "I had thought that it was either at home or at work. I spent most of my life, you know, or all of my life at home or at work, very little outside of that where I could have gotten exposure." (A. 272.)

Plaintiff's counsel also submitted invoices dated throughout 1973 and into 1974 from Walter E. Campbell Co, Inc. (hereinafter, "Campbell"), a Maryland defendant who was sued in Mosko's case, to show that Mosko may have been exposed to asbestos at the Department of Agriculture. Those invoices revealed that Campbell was doing work on the very same cafeteria Mosko recalled being constructed in the basement of the Department of Agriculture. (A. 302.) The

invoices also show that Campbell brought in One-Shot cement and Kaylo products for that job. (Id.)

In Barlow's deposition, Barlow made it clear that she was completely unaware she had been exposed to asbestos until the time she was diagnosed with mesothelioma. (A. 134.) She testified that she told her doctor that she may have been exposed to asbestos while working the assembly lines at RMR Corporation (hereinafter, "RMR"). (A. 132, 133.) This is memorialized in Barlow's medical records in a letter written by Dr. Joseph J. Bennett,, stating that Barlow mentioned that there may have been asbestos at RMR, a company that Barlow worked at. (A. 94.) In this letter, Dr. Bennett writes that Barlow found out that there was asbestos in a building where she worked. (Id.) The letter also reflects that Barlow would have to eat her lunch under fans at that job site and that she expressed concern she may have been exposed to asbestos at that point. Barlow confirmed that the job site that the letter referred to was RMR. (A. 132-133.) She further testified that she and Dr. Bennett were trying to determine how she contracted mesothelioma. (A. 134.) Barlow recalled that she heard there was asbestos at RMR after she had been diagnosed with mesothelioma. (A. 133.) She also testified that she personally could not prove that there was asbestos at RMR and she could not remember who told her there was asbestos at the RMR job site. (A. 133, 136-137.) (A. 136, 137.)

On September 24, 2012, Judge Quarles remanded the <u>Mosko</u> case back to state court, holding that Colgate did not carry its heavy burden in establishing fraudulent joinder. (A. 351-362.) Specifically, Judge Quarles held that a plaintiff's inability to independently recall a particular exposure to asbestos was insufficient for a defendant to establish fraudulent joinder. On November 1, 2012, Judge Nickerson came to the same conclusion in the <u>Barlow</u> case and remanded the action back to state court. (A. 363-370.) Of note, Judge Nickerson squarely addressed Colgate's allegations in its Notice of Removal, pleading that its subjective conclusion that the Plaintiffs never <u>intended</u> to pursue any Maryland defendants warranted the finding of fraudulent joinder. Judge Nickerson rejected that notion and ruled that the lack of the intent to pursue an in-state defendant was insufficient to impose federal jurisdiction under the theory of fraudulent joinder. (A. 367.)

C.    The Proceedings After Remand

The proceedings conducted in the state court in the immediate aftermath of the remand orders constituted the catalyst in the filings of Colgate's Motion for Sanctions and Rule 60 filing. Colgate's contention has been that Mr. Thomas P. Kelly, a member of Mosko and Barlow's trial team, arguing in favor of re-consolidation in front of Judge Glynn in the Circuit Court for Baltimore City, made

representations to the state court which exposed Ms. Lilly's statements in federal court on the remand motions as false.

What Colgate ignores is the fact that Colgate changed its position after remand first, and immediately began to press a defense geared towards proving the very claims against named Maryland defendants that it claimed in federal court were impossible to prove. After the Mosko case was remanded back to state court on September 24, 2012, counsel for the Plaintiffs filed a generic motion for severance to have Mosko's case placed back into her original trial group, along with the two cases that had not been removed to federal court, so that discovery could continue where it left off prior to the removal of Mosko's claim. (A. 808-810.) Colgate countered with a surprise request that Mosko's case not be reunited with the trial group it had been assigned to prior to removal. In fact, Colgate took the extraordinary step to try to have the trial group dismantled in its entirety. (A. 811.) The basis for this request was that the women's claims were so factually distinct from each other that Colgate could never receive a fair trial if the cases were tried together. Colgate argued that it was entitled to separate trials of the four women because they suffered potential exposures at their places of work, which were too diverse to make a consolidated proceeding proper. This request was made before discovery had been completed and well before the summary

judgment phase had begun. In fact, Colgate's request was made well before any alternative exposures had even been proven

In the case of Mosko, Colgate based its argument in favor of a separate trial upon the very same grounds that provided the basis for Mosko's Motion for Remand that Colgate now claims was fraudulent. Colgate proffered the same exact invoices from Campbell, showing that the company worked on the basement cafeteria at the Department of Agriculture where Mosko worked, and showing the purchase of asbestos insulation products. Colgate cited to Mosko's deposition where she testified that the Department of Agriculture was continuously being remodeled and her recollection of the cafeteria being built in the building's basement. (A. 829.) In short, Colgate used the same potential exposures that Ms. Lilly used to bolster Mosko's allegedly fraudulent Motion for Remand to substantiate its request that the state court splinter the trial group apart.

The Barlow case was remanded nine days after Colgate filed its opposition to Mosko's request to rejoin her trial group. (A. 370.) Knowing that Colgate would again take the position that it was entitled to separate trials despite the paucity in the record supporting the argument, Mr. Kelly drafted his Motion to Re-Consolidate to address Colgate's anticipated counter argument. (A. 864.)

In its opposition to Mr. Kelly's Motion for Re-Consolidation, Colgate took umbrage with Mr. Kelly's argument and contended that his motion was contradictory to the argument proffered in the remand proceedings. Colgate did not argue, as it argues to this Court, that it was Ms. Lilly's statements that constituted misrepresentations, but rather charged that Mr. Kelly should be "estopped from making claims that are inconsistent with their prior statements in federal court, and <u>thus cannot oppose separate trials</u> on the grounds that their claims of exposure are only those common to the other Plaintiffs." (A. 891-892) (emphasis added).

In its opposition to Mr. Kelly's Motion to Re-Consolidate, Colgate once again tried to substantiate its request for separate trials by highlighting the alleged differences in Barlow's work history, as compared to the other women in her trial group. The evidence that Colgate relied upon to show its entitlement to separate trials centered around RMR, the same job site that Barlow relied upon in illustrating to this court that there was a possibility of proving a claim against a Maryland defendant. Colgate outlined the same deposition testimony relying upon the Plaintiff in arguing in favor of remand before the federal court, and upon the same doctor's note proffered to the federal court. (A. 874-876, 885-886.) Additionally, Colgate stated that "Colgate has confirmed through documents

10

obtained in discovery that the building's owner removed over 20,000 square feet of asbestos from the RMR site in 2008, with another 18,200 square feet remaining." (A. 875, 885.)

Colgate further argued:

> [Barlow] has worked for seven different employers in at least two fields, including RMR, where she heard rumors of asbestos use and may have used asbestos wire or tape. Colgate has confirmed through discovery that asbestos was remediated from the RMR's factory, after Barlow worked there. As Barlow conceded, in federal court, 'there is some circumstantial evidence to suggest Barlow could possibly have been exposed to asbestos-containing products while working at RMR.

(A. 885-886.) What is interesting about this statement is that Plaintiffs did not have any remediation evidence to bolster its argument to this Court in the remand proceedings. Colgate, "through discovery," found that out on its very own.

At the hearing before Judge Glynn on the Motion to Re-Consolidate, Colgate continued to argue that it could and would be able to prove the very exposures (the same exposures that it now claims Ms. Lilly fraudulently represented in federal court) were possible to prove to the federal court on Mosko and Barlow's Motions for Remand. After lambasting Mr. Kelly for the statements he made in his Motion to Re-Consolidate and threatening to have Ms. Lilly sanctioned in federal court, Colgate stated on the record:

> But secondly, that allegation, that argument disregards that Colgate
> can put on a case.  And Colgate is going to be saying and is entitled to
> put on proof of these alternative exposures.
>
> It is still a work site case.  It's about the workplaces where these
> women's husbands worked, it's about where they worked, it's about
> where they may have been exposed to things that are higher than the
> very, very low level of asbestos that the plaintiffs claim to have found
> in Cashmere Bouquet, the talcum powder.  (A. 764) (emphasis added.)

Colgate went on to argue to Judge Glynn:

> MR. ABENSOHN:  On the Maryland factors, opposing counsel talked
> about how there is no difference in occupation or anything else because
> all these women say it was Cashmere Bouquet.  Well, Your Honor, we
> say it wasn't.  And we expect to produce substantial evidence, including
> of the alternative causes that these plaintiffs cited to the federal court.
>
> THE COURT:  If it was other sources of asbestos, not other products.
>
> MR. ABENSOHN:  Well, correct, Your Honor, not products,
> construction materials and the like and the various location where they
> represented to the federal court that they faced exposure.

(A. 767.)

Colgate's quest to prove that alternative workplace exposures were the cause

of the Plaintiff's injuries would continue in the months to follow.   On February 3,

2013, Colgate filed Requests for Production of Documents and Things against

Campbell requesting a variety of documents, transcripts, exhibits, and court filings

that relate to its activities at the Department of Agriculture between the years 1966-

1994, the same time period that Mosko worked at the Department of Agriculture.

(A. 899-904.) On the same day, Colgate Palmolive filed Interrogatories on Campbell requesting information about Campbell's activities at the Department of Agriculture during the same time period. Attached to the Interrogatories were the same invoices that Mosko submitted to the district court as proof in her Motion for Remand. (A. 905.) On April 25, 2013, Colgate filed a Motion to Compel against Campbell, claiming that Campbell had not provided Colgate with the requested discovery. (A. 906-922.) In that motion, Colgate based its entitlement to that discovery with the same exact deposition testimony and the same exact invoices that Plaintiffs relied upon in this Court. All of this occurred while Colgate was concurrently pursuing sanctions against counsel for the Plaintiffs for having the audacity to represent to the district courts that there was a possibility of proving those same exposures months prior in the remand proceedings.

In fact, Colgate continued to press the point in the state court proceedings after all briefing on the federal sanctions motions was completed and the parties were preparing for a hearing on the matter before Judge Nickerson. On May 31, 2013, a hearing on Colgate's Motion to Compel that was filed against Campbell was held in the Circuit Court for Baltimore City. In that hearing, Judge Glynn became irate with Colgate when it repeatedly argued that it deserved discovery against Campbell based upon the invoices that Mosko produced in the remand

proceedings, all the while arguing that the Plaintiffs lied to the federal court in proffering argument that was identical to the arguments Colgate itself was using to obtain the discovery.

> MR. ABENSOHN: With respect to Mosko in Walter Campbell, she says very specifically that she recalls construction at the Department of Agriculture building where she worked and specifically in the cafeteria where she ate with some regularity.
>
> And remember, in that case, Plaintiffs actually presented invoices from the Campbell Company to the Federal Court for themselves to substantiate the possibility that that was the cause of her illness, so again, on a discovery bar, we have a Plaintiff who has said I was a regular in that cafeteria, there was construction in that cafeteria, and we have a presentation by our Plaintiff's counsel of invoices confirming consistent with her recollection in deposition that there was construction and use of asbestos products in that exact location.
>
> So, again, on a discovery threshold, all we are seeking is full documentation and full response for admissions addressed to asbestos to request for admissions addressed to asbestos at our Plaintiff's workplace in pursuit of an alternative exposure defense.
>
> THE COURT: Returning to the federal issue, obviously after this hearing when you go to U.S. District Court, the Plaintiffs are going to cite what you said and say, well, obviously what we filed was not in bad faith because obviously the Defendants think we have a case against these other third-party Defendants. What are you going to say to that?
>
> MR. ABENSOHN: Your Honor, again, our position is they lied about their position. They told a Federal Court in sum and substance that we are pursuing claims against these entities, and they came back a

week after they got their reward on that and told your Honor that we have absolutely no interest in pursuing claims against these Defendants.

THE COURT: And they still say they have no case?

MR. ABENSOHN: Your Honor, they certainly said they had no case. In Federal Court they said they had a case.

(A. 971-973.)

Campbell, in turn, argued that Colgate was not entitled to discovery because Colgate could not produce a witness that placed the Plaintiffs in the vicinity of any projects while asbestos was actively being installed. (A. 976-977; 980-983; 989-993) Mr. Flax, counsel for Campbell, pointed out the contradictory assertions that Colgate was making to the court.

MR. FLAX: But really the Court in some respects took the wind out of one of my arguments, took the sail right away because what you asked regarding what is going on in Federal Court and what's going on here seems to me to be a tremendous legal fiction for Colgate themselves because essentially what they are asking of the Court here is saying to the Federal Court, well, it belongs in the State Court. You can't have it both ways.

THE COURT: They are sort of ruining their claim in Federal Court.

MR. FLAX: But it goes beyond that because the assertions they made in Federal Court essentially defeat, and the starting point of this discovery and the substantial justification for responding in this fashion is relevant.

(A. 977-978)

In response, Colgate tried to downplay the contradictory nature of its position.

> MR. ABENSOHN: . . .As far as this idea that we are having it both ways with the Federal Court action –
>
> THE COURT: You are, sort of.
>
> MR. ABENSOHN: Your Honor, we are not. This to me is so backwards. Our position in Federal Court wasn't that there was no alternative source.
>
> THE COURT: That's way too subtle.
>
> MR. ABENSOHN: Our position in Federal Court was that the Plaintiffs were lying about their position. Before they came in with the Walter Campbell invoices and everything else, they had never identified the basis for their claims.
>
> THE COURT: They are just going to say they weren't lying about their position; they changed their position. That is a different thing.
>
> MR. ABENSOHN: Your Honor, the idea that they changed their position eight days after they secured their remand –
>
> THE COURT: No.
>
> MR. ABENSOHN: – is implausible on its face.
>
> THE COURT: You have decried your position of any ideological or logical purity. Now it's all murk and haze. They lied about their position? I don't know what that means.
>
> MR. ABENSOHN: Well, Your Honor it means that when we called them out in our removal application, that they were going to Federal Court without any genuine intention to pursue third-party Defendants, and they stand up and say, oh, no, we do intend to pursue third-party

Defendants, and then they turn around a week later and say never mind that. We don't think that's murky at all. We think that's a very obvious strategic calculation and a manipulation of the process.

But in any event, they presented those invoices. <u>They presented an evidentiary record to suggest at least a possible basis to think that Campbell had something to do with this.</u> She testified in multiple respects that a least suggests a credible basis for thinking that Campbell had something to do with this.

(A. 985-987)(emphasis added).

Judge Glynn granted Colgate's motions for more discovery, but chastised Colgate for the conflicting arguments presented at the hearing:

THE COURT: All right. It is disturbing because I know it's a waste of time, and I am also bothered by the lack of ideological purity on the behalf of Defendants. This is trying to cut all the babies in half, and it's a mess. That's a bad metaphor.

This is not appropriate. It bothers me because you have got a lot of things to do, and you are wasting time with this nonsense.

(A. 994)

D.    The Sanctions Proceedings.

While the state court proceedings were moving forward with discovery, Colgate followed through with its threat to file Motions for Sanctions against counsel for the Plaintiffs. On January 30, 2013, Colgate filed its Motion for Sanctions pursuant to FRCP Rule 11 in the <u>Mosko</u> case. (A. 371.) Another Motion for Sanctions was filed in the <u>Barlow</u> case on February 20, 2013. (A. 524.) Both

motions were substantially the same in their allegations and their claim for relief. In the federal sanctions motions, Colgate cherry picked statements made in the Plaintiffs' Motions for Remand and Plaintiffs' Motion to Re-Consolidate, to substantiate its argument that misrepresentations made by Ms. Lilly in the remand proceedings warranted Rule 11 sanctions. Both motions were accompanied by a chart that compared and contrasted the statements made by Ms. Lilly and Mr. Kelly in the two proceedings. (A. 398-400; A. 550-552.)

The relief that Colgate requested in both motions targeted the attorneys of Mosko and Barlow. In both motions, Colgate requested monetary sanctions in the form of costs and attorneys' fees. (A. 391, 544.) Colgate also vaguely requested other sanctions that the district court might see fit to redress the offense. In that regard, Colgate suggested that the district court order that Ms. Lilly be referred to the Court's Disciplinary and Admissions Committee. (A. 392, 545.) Colgate never asked that the district court vacate the remand orders issued in either case or any other relief that might affect Mosko and Barlow's substantive legal rights. No reference to FRCP 60(b)(3) was made in either motion.

In response to Colgate's filings, counsel for the Plaintiffs decided to forgo the filing of an opposition until ordered by the district court as allowed under Local Rule 105.8(b). Colgate did not ask for a briefing schedule or make any move to

press its motions for sanctions forward in federal court. Instead, Colgate filed a third Motion for Sanctions in the Circuit Court for Baltimore City requesting that Judge Glynn impose sanctions against the Plaintiffs for the alleged misrepresentations made in federal court. (A. 769-778.) In a marked departure from its requested prayer for relief in the federal motions, Colgate made the extraordinary request that Judge Glynn dismiss the <u>Mosko</u> and <u>Barlow</u> lawsuits and order that Plaintiffs refile their lawsuits against Colgate only, thereby artificially manufacturing federal jurisdiction. (A. 778.) At a motions hearing conducted on May 10, 2013, Judge Glynn denied Colgate's motion without entertaining oral argument. (A. 807.)

After letting the previously filed federal Motions for Sanctions sit by the wayside for several months, Colgate finally asked the district court to set a briefing schedule on the federal motions, six days after Judge Glynn denied the sanction motions filed in state court. The two actions were consolidated and assigned to Judge Nickerson, who ordered briefing. (A. 712.) In requesting the briefing schedule, Colgate never amended its Motions for Sanctions to ask that the remand orders be vacated, and no mention of Rule 60(b)(3) relief was made.

Plaintiffs filed their Opposition to the Motions for Sanctions on May 30, 2013 based upon Rule 11 and Colgate's prayer for monetary relief, and Colgate

filed its reply on June 10, 2013. Again, Colgate made no request in its reply that the district court vacate its remand orders, and filed no other motion requesting Rule 60(b)(3) relief. Thereafter, two surreplies were proffered to the Court. The first was filed on June 14, 2013 by the Plaintiffs to address a brand new unsubstantiated allegation of collusion contained in Colgate's reply, and to draw the court's attention to the most recent hearing in front of Judge Glynn which occurred after Plaintiffs filed their opposition. (A. 945.) The second surreply was filed by Colgate on June 17, 2012. Once again, Colgate made no mention of any intention to have the remand orders vacated or to pursue Rule 60(b)(3) relief. (A. 995.)

It was not until Colgate's rebuttal at a hearing conducted in front of Judge Nickerson on June 20, 2013 that Colgate would finally request that the remand orders, that had been in place for seven months respectively, be vacated. (A. 1085-1086.) Colgate's obvious attempt to shove such a request in front of the district court through the back door forced Counsel for the Plaintiffs to take the podium to address the new request, without knowing if Judge Nickerson even intended on allowing additional argument. (A. 1086.) Four days after the hearing, Colgate finally filed a Motion for Relief from Remand Orders Pursuant to Rule 60(b)(3), claiming that the remand orders should be vacated on the basis that the Plaintiffs

committed fraud before the district court in obtaining remand. (A. 1099.) Judge Nickerson denied Colgate's request for Rule 11 sanctions and Rule 60(b)(3) relief, two days later. (A. 1106.) Plaintiffs never had the opportunity to oppose Colgate's request that the remand orders be vacated under Rule 60(b)(3).

## SUMMARY OF THE ARGUMENT

The district did not abuse it discretion denying Colgate's Motion for Sanctions and Motion for Rule 60(b)(3) Relief. Judge Nickerson was acting well within his discretion in holding that the Plaintiff's did not make any misrepresentations during the remand proceedings. Plaintiffs relied upon established federal law when filing its Motions for Remand and substantiated each and every factual statement contained therein with citation to the record. Colgate's argument that the Plaintiffs misrepresented that they intended to pursue Maryland defendants must fail as no such representations were made. Colgate has injected this contention into the proceedings in an attempt to attack the legal basis for the original remand orders.

Judge Nickerson also did not abuse his discretion ruling that Colgate's request that the remand orders be vacated under Rule 11 or Rule 60(b)(3) because 28 U.S.C. §1447(d) prohibits the review of remand orders. This prohibition

includes reconsideration by the district court and includes collateral review of remand orders using other procedural filings. Finally, Colgate's request that this Court grant it Rule 60(b)(3) motion on the merits should be denied since the Plaintiffs never had the opportunity to oppose the motion and because the district court has the discretion to rule on Rule 60(b) motions.

## STANDARD OF REVIEW

Plaintiffs agree that the motion for sanction's standard is an abuse of discretion by Colgate, but Colgate fails to develop or address the Fed. R. Civ. P. 60(b)(3) standard in its appeal. Examining, *Consolidated Masonry & Fireproofing Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) it states:

> The disposition of motions made under Rules 55(c) and 60(b) is a matter which lies largely within the discretion of the trial judge and his action is not lightly to be disturbed by an appellate court. There is no abuse of discretion in denying such a motion unless it clearly appears that the District Court was clearly wrong in finding that good cause had not been shown for setting aside the default.

Id. at 1082.

## ARGUMENT

Judge Nickerson, in denying Colgate's Motions for Sanctions and Rule 60(b) relief, made two distinct rulings. First, Judge Nickerson ruled that he was

unable to vacate the remand orders previously issued in the <u>Mosko</u> and <u>Barlow</u> cases because it would violate 28 U.S.C. §1447(d), which prohibits the review of orders of remand. Secondly, Judge Nickerson held that even if Colgate had asked for appropriate relief under Rule 11, he would hold that Plaintiffs made no representations to the district Court in its remand motions. Since the Plaintiffs' conduct during the remand proceedings lies at the heart of this appeal, Plaintiffs will discuss Colgate's allegations of misconduct first.

I.  The District Court Did Not Abuse Its Discretion In Finding That There Was No Misconduct On The Part Of Plaintiffs' Counsel During The Remand Proceedings.

Throughout the sanctions proceedings, Colgate has contended that Ms. Lilly, in arguing in favor of remand on behalf of her clients, made a series of misrepresentations that tainted the remand proceedings and induced Judge Quarles and Judge Nickerson to issue remand orders that could not have been obtained absent the misrepresentations. In order to establish the existence of the alleged misrepresentations, Colgate pointed to statements made by Mr. Kelly in state court after remand, which seemingly contradicted statements made in the remand motions. Colgate presents these two groups of statements completely outside the context in which they were made.

Colgate demands a finding that misrepresentations were made in the remand proceedings based solely off of the existence of the statements made by Mr. Kelly in state court, without any attempt to firmly establish that the representations made by Ms. Lilly in the remand proceedings were actually false. As a federal court, the district court below only had the power to police conduct that occurred before it. What may have been said or done in the state court does not come under the jurisdiction of the federal judiciary, and the sole question before Judge Nickerson was whether there were any misrepresentations made before the district court while the <u>Mosko</u> and <u>Barlow</u> cases were in federal court. Colgate's assertions that the Motions for Remand contained any false statements are completely unfounded. Each and every sentence contained in the motions was substantiated by evidence placed upon the record or corroborated by appropriate legal citation.

Additionally, Colgate argues that Plaintiffs fraudulently obtained remand in the federal proceedings, based upon assertions that appear nowhere in either Motion for Remand. Specifically, Colgate argues that Plaintiffs misrepresented themselves by telling the federal district court that they intended to actively pursue certain Maryland defendants in state court. Plaintiffs never made that statement to either Judge Quarles or Judge Nickerson, because that was not the legal standard

that needed to be met under federal law in order to gain the remand of an action removed upon allegations of fraudulent joinder.

Since the sanctions proceedings were instituted pursuant to FRCP 11, and the belated Rule 60 motion was filed only "in an abundance of caution...based upon the objection of Plaintiffs' counsel to Colgate's illustrative reference to Rule 60(b)(3)" in Colgate's rebuttal argument in the hearing before Judge Nickerson, a review of the veracity of the statements made by Ms. Lilly in the Motions for Remand is most properly conducted under the standard of FRCP 11. That rule states that an attorney presenting a pleading to a federal court certifies:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for Establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Motions for sanctions are to be filed sparingly. <u>Thomas v. Treasury Management Assoc., Inc.</u>, 158 F.R.D. 364 (D. Md. 1994). Furthermore, requests for Rule 11 sanctions are adjudged at the time the paper is filed with the court, and there is no continuing duty to reevaluate a paper once filed in federal court. <u>Brubaker v. City of Richmond</u>, 943 F.2d 1363, 1381-1382 (4th Cir. 1991). A federal court may not apply Rule 11 sanctions for any filing that occurred in another court. <u>Kirby v. Allegheny Beverage Corp.</u>, 811 F.2d 253 (4th Cir. 1987). ("By its terms, Rule 11 provides for sanctions when a pleading is signed "in violation of this rule." At the time a state court pleading is signed, the signing attorney is not subject to the Federal Rules of Civil Procedure. Therefore, a pleading signed in a state court proceeding which is later removed to federal court clearly cannot be signed in violation of Rule 11.")

Under the very terms of FRCP 11, a party may be sanctioned if it files a paper with a federal court for an improper purpose, such as to cause delay or increase expenses. It has never been the contention of Colgate that Plaintiffs filed the Motions for Remand in the <u>Mosko</u> and <u>Barlow</u> cases for any other purpose than to obtain remand. Therefore, only the second and third bases are left remaining to justify sanctions. Under those subsections, sanctions may be ordered against a party if it takes action that is not founded in law or fact.

According to the very language of Rule 11, a statement made in a paper filed under the federal rules is not sanctionable if it is "warranted by existing law" and has "evidentiary support" formed after an "inquiry reasonable under the circumstances." In determining whether a representation constitutes a Rule 11( c ) violation, a court "must determine whether there is *any* factual basis for [the] allegation. Only where *no* factual basis exists is Rule 11's factual inquiry requirement violated." Brubaker, 943 F.2d at 1377. Similarly, Rule 11 sanctions do not apply if there is any colorable basis in law for the filing party to succeed on the merits. As noted by this Court in Brubanker, supra, "[a] prefiling investigation of the law will not pass muster under Rule 11 where the complaint has 'absolutely no chance of success under the existing precedent.' Id at 1473 (quoting Cleveland Demolition Co., Inc. v. Azcon Scrap Corp., 827 F.2d 984 (4th Cir, 1987).

    A.    Plaintiffs's Motions for Remand were Grounded Squarely in Black Letter Law.

In its original Motions for Sanctions, Colgate did not initially challenge the fact that the cases cited to by the Plaintiffs provided a colorable basis in law for filing the Motions for Remand. Instead, it based the motions squarely upon the alleged conflicting statements, arguing that the conflict illustrated that the Plaintiffs misrepresented themselves before the district court during the remand proceedings. After the Plaintiffs filed their opposition, which discussed each statement and cited

to the places in the record where each statement was substantiated by facts, Colgate changed its tact in its reply brief and argued that the Plaintiffs misrepresented to the district court that they intended to actively pursue the Maryland defendants in state court. Colgate has taken the issue one step further on appeal by arguing that not only did Ms. Lilly fraudulently represent in the Motions for Remand that the Plaintiffs intended to "make a *bona fide* pursuit of their claims against the Maryland defendants" once the cases were back in state court (Appellant's Brief, p.37), and that two different district court judges granted the motions for remand only because they "applied a generous standard under which Plaintiffs' mere 'glimmer of hope' of success … is sufficient to defeat a claim for fraudulent joinder." (Appellant's Brief, p. 40.)

There are two very serious problems with Colgate's argument that the Plaintiffs' fraudulently represented an intent to pursue any of the Maryland defendants in state court. The first problem is that Counsel for the Plaintiffs <u>never once</u> made any such representation at any time in either Motion for Remand filed in the district court. In fact, each and every time that Colgate states that Ms. Lilly made that same representation, a citation to the record is conspicuously and most tellingly absent. It begs the question, of course, how an attorney who makes no representation can then be sanctioned for making a misrepresentation. The notion

is completely nonsensical, and Colgate's desperation to manufacturer misconduct by basing its argument upon non-existent representations has reduced Colgate to make serious misrepresentations itself.

The truth is that the Plaintiffs in this case never represented to the federal court that it intended to generate evidence against any of the in-state defendants, or even that they would prevail against the in-state defendants. Indeed, such representations would have been irrelevant to the inquiry, because that is not what the federal standard requires. Instead, the Plaintiffs argued that there was a possibility that evidence could be generated or a possibility that the Plaintiffs could prevail against the local defendants, and that is all that is required to obtain remand in a fraudulent joinder argument.

This point bears directly upon the second major problem with Colgate's argument. In arguing that the Plaintiffs never intended to pursue a local defendant to obtain judgment, and that the district court judges applied an overly generous standard in ordering remand, Colgate asks this Court to review the merits of the original remand orders themselves. Under 28 U.S.C. §1447(d), orders remanding cases back to state court are unreviewable "on appeal or otherwise." In fact, once a remand is ordered it cannot be vacated or reconsidered, even if the order is incorrect.

In its notices of removal in both the <u>Barlow</u> and <u>Mosko</u> cases, Colgate cited to the answers to interrogatories of both women as well as their deposition testimony in order to argue that the absence of product identification against the Maryland defendants showed that the Plaintiffs had no intent of pursuing the in-state parties and, therefore, there was no possibility that the Plaintiffs could prevail against them. (A. 30, 40.)Again, Plaintiffs did not address the intent allegation in the remand motions and, instead, argued the proper standard. Neither Judge Quarles nor Judge Nickerson accepted Colgate's contention that intent was an element to the fraudulent joinder analysis. In fact, Judge Nickerson expressly rejected the argument and ruled that intent alone was insufficient to establish the existence of fraudulent joinder. (A. 367.)

Colgate's argument regarding the plaintiff's intent, therefore, had nothing to do with any alleged misrepresentations made in the remand proceedings because no such representations occurred. Rather, Colgate was challenging the legal basis that both district court judges relied upon in rendering their decisions on the Motions for Remand. Accordingly, Colgate's appeal is in actuality a sly maneuver to bring the merits of the original remand orders before this Court.

Regardless, a review of the cases cited by the Plaintiffs in the remand proceedings discussing the fraudulent joinder doctrine reveals that the generous

standard applied by both Judge Quarles and Judge Nickerson was intended to be generous. A party seeking to establish fraudulent joinder must prove that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court[,]" and the court must resolve all questions of law and fact in favor of the plaintiff. Riverdale Baptist Church v. Certainteed Corp., 349 F. Supp. 2d 943 (D. Md. 2004). The burden placed upon removing defendants claiming fraudulent joinder is exceedingly heavy, and the "standard is even more favorable to the plaintiff than the standard for a motion to dismiss." Mayes v. Rappoport, 198 F.3d 457 (4th Cir. 1999)(quoting Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999)). Where a federal court finds that a "plaintiff has even a 'slight possibility of relief'– a 'glimmer of hope'– the defendant has failed to meet its burden and the case must be remanded to state court." Bendy v. C.B. Fleet Co., 2011 WL 1161733 (D. Md. 2011)(quoting Hartley v. CSX Transp., Inc., 187 F.3d 422, 426 (4th Cir. 1999)).

The Maryland district courts have refused to find fraudulent joinder in cases where Maryland state courts have ruled that no cause of action exists against in-state defendants in identical cases. Skevofilax v. Aventis Pasteur, Inc., 304 F. Supp. 2d 691, 693, fn.3 (D. Md. 2003)("Frankly, given the inherently elastic and indeed, virtually organic, character of common law negligence claims, it would be

surprising, in the absence of a decision directly on point by the highest court of a state, to see many negligence claims disregarded under the fraudulent joinder doctrine.")  And the district courts of this state have also refused to apply the fraudulent joinder doctrine, even where an agent of a plaintiff has admitted that he had notice of the defective nature of work done on a church more than three years prior to the church filing suit. Riverdale Baptist Church v. Certainteed Corp., 349 F. Supp. 2d 943, 948 (D. Md. 2004)(noting that the "no possibility of success" test is "more properly applied not rigidly, but– as it was intended– as a proxy for the detection of fraud in joinder.")

Asbestos cases, in general, are not conducive to fraudulent joinder removals. To this point, Plaintiffs cited to over fifteen cases in their federal court filings where the fraudulent joinder analysis was conducted in asbestos cases that were removed in the same manner that Mosko and Barlow's claims were removed. (A. 106 - 113)  In each case, the judges found that fraudulent joinder did not apply. The common theme in all of those cases is that mere inability for a Plaintiff to identify the product of an in-state defendant is insufficient to establish fraudulent joinder under federal law. As noted by Vasura v. ACandS, 84 F.Supp. 2d 531 (S.D. NY 2000):

> [a]lthough Atlas Turner correctly notes that Rapid-
> American was not identified in plaintiff's deposition
> testimony, that omission does not necessarily defeat the
> possibility of a claim against it. None of the other
> defendants...was mentioned by the plaintiff in her
> testimony concerning her exposure to asbestos during the
> renovations at Café Geiger. If this omission alone were
> sufficient to preclude a finding of liability undoubtedly
> Atlas Turner, who also was not mentioned, would press
> for dismissal of the claim against it as well.

84 F. Supp. 2d at 539.

Accordingly, the Plaintiffs had more than a sufficient basis for filing their

Motions for Remand under federal law, and Judge Quarles did not abuse his

discretion in rejecting for the second time Colgate's argument that the alleged lack

of intent on the part of the Plaintiffs required that the cases be tried in federal court.

B.    Plaintiffs Provided Evidentiary Support For The Representations
      Made In Their Motions For Remand.

The foundation of Colgate's appeal lies in its contention that Plaintiffs

committed fraud in the district court below by making material misrepresentations

in the remand proceedings, inducing two federal judges into granting remand of the

Mosko and Barlow cases. What Colgate utterly fails to do is explain with any

particularity how any of the statements made in federal court were actually false.

In the Motions for Remand, Counsel for the Plaintiffs laid out the facts as they

applied to each Plaintiff's case and applied those established facts to the relevant

case law. Each statement of fact was accompanied by a citation to the factual record. If the factual basis for the Plaintiffs arguments were substantiated, then Colgate cannot argue that Counsel for the Plaintiffs made misrepresentations in their Motions for Remand.

In the remand proceedings, Plaintiffs did not dispute that neither Barlow nor Mosko could independently recall any exposures to asbestos other than their use of Cashmere Bouquet. This point was acknowledged freely, and both Judges acknowledged that fact in their respective opinions. Instead, Plaintiffs argued that the mere fact that a plaintiff could not independently recall a specific exposure to a specific product did not necessarily mean that there was no possibility of proving a claim. To bolster that argument, Plaintiffs turned to the depositions of each Plaintiff and some documentary evidence to illustrate that it was possible to prove claims against in-state defendants.

In the case of Mosko, there was testimony that she worked at the Department of Agriculture Building from 1966 to 1994, which was frequently being renovated, and that she recalled certain specific remodeling that she witnessed during her career at the Department of Agriculture, including the construction of a cafeteria in a new subbasement. (A. 276, 277.) Although she could not recall if she was exposed to any asbestos at the Department of

Agriculture while it was under renovation, she testified that "I had thought that it was either at home or at work. I spent most of my life, you know, or all of my life at home or at work, very little outside of that where I could have gotten exposure." (A. 272.) Plaintiff's counsel also submitted invoices dated throughout 1973 and into 1974, from Campbell Co, Inc., showing that Campbell applied One-Shot cement and Kaylo during the construction of the cafeteria at the Department of Agriculture. (A. 302.) In Barlow's case, deposition testimony revealed that Barlow told her doctor that she may have been exposed to asbestos while working the assembly lines at RMR. Barlow recalled that she heard there was asbestos at RMR after she had been diagnosed with mesothelioma. (A. 133.) She also testified that she personally could not prove that there was asbestos at RMR and she could not remember who told her there was asbestos at the RMR job site. (A. 133, 136-137.) Plaintiffs also cited to a letter in Barlow's medical records, written by Dr. Joseph J. Bennett, stating that Barlow mentioned that there may have been asbestos at RMR, a company that Barlow worked at. (A. 94.) In this letter, Dr. Bennett writes that Barlow would have to eat her lunch under fans at that job site and that she expressed concern she may have been exposed to asbestos at that point.

These are the basic facts that were presented to Judge Quarles and Judge Nickerson in the remand proceedings to establish the validity of remand. All of

those statements were substantiated by evidentiary proof in the remand proceedings through citation to the Plaintiffs' deposition testimony, or the proffer of documentary evidence in the form of the Campbell invoices and Dr. Bennett's letter. At no time during these sanctions proceedings has Colgate contended that the Plaintiffs mischaracterized either Plaintiff's testimony or that the testimony was false. At no time has Colgate contended that the documentary evidence was inauthentic, nor does it contend that Plaintiffs mischaracterized the contents of the documents. There has been absolutely no attempt whatsoever by Colgate to establish that any factual representation made in the Motions for Remand were false or inaccurate.

Instead, Colgate relies upon statements made in the course of legal argument that are merely legal conclusions, resulting from the application of substantiated facts to applicable law. Specifically, Colgate argues that Ms. Lilly misrepresented that the substantiated and undisputed facts proffered in the Motions for Remand raised an inference that the Plaintiffs could possibly have been exposed at the places of employment. It further contends that Ms. Lilly committed fraud by stating that "nothing in Mosko's testimony…precludes the possibility of recovery against non-diverse Defendants" that Cashmere Bouquet was "not the only

potential source" of Mr. Barlow's exposures to asbestos. These three statements are the only statements that Colgate contends were fraudulent.

These statements are not factual at all and cannot be classified as misrepresentations. They constitute legal conclusions that come in the course of applying the undisputed federal standard to the substantiated factual contentions contained within Barlow's and Mosko's Motions for Remand. Judge Quarles and Judge Nickerson were free to reject those conclusions, or to apply the undisputed facts to the undisputed federal standard and come to a completely different conclusion. In short, both judges had all the information they needed to come to an informed decision on the matter.

The fact that an attorney calls evidence circumstantial, or claims a piece of evidence gives rise to an inference, falls squarely into the category of legal argument. There is no document that will prove that a fact is circumstantial; it is a conclusion one draws once the fact is substantiated. There is no testimony that will prove that something gives rise to an inference; inferences are drawn once evidence is adduced. In essence, Colgate is trying to gain sanctions against the Plaintiffs for applying substantiated evidence to black letter federal law. The Plaintiffs, in giving a correct recitation of the law that afforded the relief requested and provided evidentiary support for the factual representations made to the district

court, simply did not violate Rule 11 or fraudulently induce remand with misrepresentations of law or fact.

In truth, Colgate spends the vast majority of its argument microscopically examining Mr. Kelly's statements made on a Motion for Re-Consolidation in a completely different jurisdiction, after the federal courts had relinquished jurisdiction and closed the respective dockets. It is true that Mr. Kelly argued in the state court in his Motion for Re-consolidation that there was no evidence that Barlow and Mosko experienced any other exposures other than their exposures to Cashmere Bouquet. These statements, however were made in a completely different context. More importantly, it was that Colgate changed its position first, and Mr. Kelly's statements were prompted by Colgate's sudden departure from its position in the remand proceedings in order to argue that Mosko's and Barlows potential exposures at the Department of Agriculture and RMR warranted separate trials before any triable issue of those potential exposures had been generated.

Directly after the remand of the Mosko case, counsel for Mosko asked the state court to return her case back to the consolidated trial group her case had originally been assigned to, so that Mosko's case could continue to be developed. (A. 809.) Colgate immediately opposed the re-consolidation and asked the state court to order separate trials for all the women in the trial group. (A. 812.) The

basis for its argument was that the three cases were simply too factually distinguishable for them to be tried as one. To establish its right to separate trials, Colgate relied upon the same exact evidence and the same exact argument that Ms. Lilly made before the federal court in the remand motions; i.e. that Mosko's deposition testimony relating to the construction of the cafeteria in the Department of Agriculture, coupled with the Campbell invoices, evidenced a possible exposure at her workplace.

Colgate's request was a highly unusual one in that it was made so early in discovery. The Circuit Court for Baltimore City disposes of its asbestos docket with consolidated trial groups. Cases with some type of commonality will be grouped together for discovery to improve the efficiency of the courts. Many times those cases go to trial together, but when cases diverge significantly on a factual level during discovery, separate trials can be ordered. Separate trials are simply not ordered until the factual record has been developed.

At the time of the remand of the Mosko case, there was no proof of an actual exposure. Mosko did work in the Department of Agriculture, and there was evidence of asbestos work being done during the period that she worked there. Invoices placed Campbell's asbestos activities in the new cafeteria as it was being constructed. (A. 303 – 313.) Based upon that evidence alone, it was possible that

Mosko could have been exposed to asbestos at the Department of Agriculture. Actually proving that fact would require an additional witness placing Mosko in the vicinity of asbestos installation activities since Mosko herself was unable to testify that she was exposed at the Department of Agriculture, and neither Mosko nor Colgate had that evidence at that time. So, Colgate wanted the state court to order four trials, where just one had been contemplated, on the same basis that Judge Quarles found that there was no fraudulent joinder; i.e. that it was possible to prove an exposure other than to Cashmere Bouquet. In essence, Colgate wanted Judge Glynn to order separate trials for all four women without having to prove that another triable exposure to Mosko even existed.

The Barlow remand was effectuated while the Mosko consolidation motions were still pending; it is in that context that Mr. Kelly statements' were made. In the remand proceedings, Ms. Lilly was applying a federal standard that looks to the record in a prospective fashion. The standard applied in the remand proceedings was whether there was any possibility that a claim could be proved against a Maryland defendant. Mr. Kelly, on the other hand, was tasked with the responsibility of staving off Colgate's attempt to dismantle the entire trial group on the basis of possible exposures that had yet to be established, because of the lack of evidence placing either Barlow or Mosko in a position where they had actual

contact with airborne asbestos fibers at their places of employment. In other words, the context of Mr. Kelly's argument was not prospective in nature, but based squarely upon the record as it existed in the here and now, as of November of 2012, approximately five months after Colgate's removal of these cases.

In that regard, Mr. Kelly was correct in that there was no evidence in the record which would support Colgate's argument that the cases were simply too dissimilar to be tried together. This is because, to this day, there is still no evidence that places either Barlow or Mosko in the close proximity of asbestos insulation activities at their respective job sites. Mr. Kelly's statement that "there is absolutely no evidence to indicate or suggest that the Plaintiffs had any exposure in any form other than Cashmere Bouquet" was admittedly an overstatement, and Plaintiffs acknowledged that fact to the district court. There was some evidence, slight as it may be, submitted to the court indicating that there could possibly be provable workplace exposures in Barlow and Mosko's cases. The representation, however, was not wrong in the context in which it was given, because no one yet has found a witness that can place either woman in regular or frequent proximity to asbestos insulation activities at RMR or the Department of Agriculture.

At the oral argument in front of Judge Glynn, Mr. Kelly attempted to clarify his position and explain the difference between the standard for the fraudulent

joinder doctrine and standard for consolidation as contemplated under the Maryland Rules.

> MR. KELLY: Both judges, Judge Nickerson and Judge Quarles, in that order recite specifically that Mosko and Barlow in their depositions testified under oath, I was only exposed to Cashmere Bouquet, I was not exposed to any other asbestos product. And then I think in one, they also said that or maybe both have said that in their Answers to Interrogatories. The federal courts knew that.
>
> For them to suggest that we somehow misled a federal court when the federal judges say, we acknowledge the plaintiffs say they were only exposed to one product, and that product is Cashmere Bouquet, I think it's outrageous for Colgate to pursue this further.
>
> \* \* \*
>
> You know, is it possible that Mosko was exposed at the federal FDA [sic] in D.C.? It's possible because some defendants did work there. But Mosko in her deposition said, I wasn't around any of the work at the FDA. The federal courts knew that because we attached her deposition.
>
> The same with Barlow, she may have been exposed at a manufacturing plant in Elkton, but she said in her deposition, I don't think I was exposed at the plant in Elkton, I think I was only exposed to Cashmere Bouquet. That was attached and given to –
>
> THE COURT: So you told the judges in the U.S. District Court that you were contending there was no viable claim against any of these other defendants?
>
> MR. KELLY: All we had to prove in federal court is that there was a glimmer of hope. And the glimmer of hope is we alleged in the complaint a case against Maryland defendants. And based on the

facts as they existed at that time back in June, that there were some
possibility -- microscopic is all we have to show -- that there is some
possibility that the plaintiffs will have a viable claim against a
Maryland defendant. And the courts go through that.

(A. 765-767.)

Colgate, on the other hand, has continued to press its argument in state court

that it can and will prove Mosko and Barlow experienced alternative exposures

showing that Cashmere Bouquet was not the cause of their injuries. Colgate has

produced evidence of remediation occurring at RMR to bolster its argument that

other exposures may in fact exist in Barlow's case, evidence that the Plaintiffs

themselves did not have at the time of the remand proceedings. (A. 875, 885.)

There, Colgate has reiterated the same arguments made by Plaintiffs in their

Motions for Remand that Mosko was exposed at the Department of Agriculture

during the construction of the cafeteria, and has pursued jobsite specific evidence

against Campbell relating to the construction of that jobsite throughout the course

of the state court proceedings. Colgate has gone as far as to represent to Judge

Glynn that it intended to produce "substantial" proof of those alternative exposures

at trial. The "substantial" proof Colgate intended to proffer was proof of exposures

to both women at the Department of Agriculture and RMR. (A. 767.)

The Plaintiffs have no problem with Colgate lodging such a defense; in fact,

it was anticipated. The dishonesty lies squarely in the fact that Colgate has been

making these assertions to Judge Glynn contemporaneously to pursuing sanctions against Ms. Lilly for making the same exact argument in federal court. In fact, Colgate admitted to Judge Glynn just one day after Plaintiffs filed their Opposition to the Motions for Sanctions that Ms. Lilly's argument in favor of remand in the Mosko case was persuasive. In a hearing to compel discovery against Campbell, Colgate stated that the Plaintiffs "presented an evidentiary record to suggest at least a possible basis to think that Campbell had something to do with this." (A. 987.) The hypocrisy of Colgate's argument did not escape Judge Glynn. At the same hearing, he pointed out that Colgate had renounced its "position of any ideological or logical purity" and turned it into "all murk and haze," and stated that he was "bothered by the lack of ideological purity" by Colgate, declaring the entire situation "… a mess." (A. 994.)

It is no wonder that Judge Nickerson declined to find that the Plaintiffs did not make any misrepresentations during the remand proceedings based upon this very complex record. Colgate has manipulated the court record in both courts to suit its immediate needs and taken opposing positions in two different forums as it sees fit. Colgate has morphed and molded its own arguments in this very sanctions proceeding to the point where the original motion for sanctions asking for monetary damages and the referral of Ms. Lilly to an appropriate disciplinary

committee based solely upon the seemingly contradictory assertions of two attorneys has turned into an appeal on a partially briefed Rule 60 Motion, tinkered together in the eleventh hour based upon representations that were <u>never</u> made to the district court in the remand proceedings. Judge Nickerson simply did not abuse his discretion in rejecting Colgate's argument that the Plaintiffs acted inappropriately in the remand proceedings.

II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING COLGATE'S REQUEST THAT THE MOSKO AND BARLOW REMAND ORDERS BE VACATED.

Judge Nickerson further held that Colgate's request that the court vacate the <u>Mosko</u> and <u>Barlow</u> remand orders must be denied, as it would constitute a violation of 28 U.S.C. §1447(d). This ruling was directed toward Colgate's last minute request that Judge Nickerson vacate the two remand orders pursuant to Rule 60(b)(3).

At the onset of the sanction proceedings, Colgate presented an argument that was typical of a motion filed pursuant to Rule 11. In its reply, however, Colgate began to slowly transform its argument into a motion for reconsideration of the remand orders. It was in Colgate's reply that Colgate, for the first time in the sanctions proceedings, argued that the Plaintiffs' supposed lack of intent to pursue named Maryland defendants warranted sanctions, despite the fact that this

argument had been rejected by both Judge Quarles and Judge Nickerson in the remand proceedings. (A. 936-943.)

By the time that the hearing was conducted on its Motion for Sanctions, Colgate primarily focused its energy on attacking the basis for remand. This included a brand new and odd argument that Plaintiffs were fraudulent in obtaining remand because they never sued RMR, the employer of Barlow. (A. 1061, 1081.)

At that hearing, Colgate repeatedly questioned the "glimmer of hope standard" and continued to reiterate that intent of the plaintiffs was dispositive in a remand proceeding despite the fact that Judge Nickerson rejected that argument in the remand proceedings. (A. 1061-1064; 1081-1084.)

This argument was bizarre because it was never raised by Colgate in the remand proceedings as a defense, even though Colgate knew that RMR was not a named defendant at the time of removal. (E. 314 – 349.) The sudden shift in the tenor of Colgate's position prompted Ms. Lilly to state that: "In essence, what we're really doing here is rearguing a motion to remand one year after it was granted." (A. 1092.) The finale to Colgate's charade came in its rebuttal argument, where it abandoned its claim to monetary sanctions, relieved Ms. Lilly of the threat of disciplinary action, and asked that the court reverse its previous

orders of remand. (A. 1085, 1086.) Colgate's formal motion for Rule 60 relief was finally filed four days after the hearing. (A. 1099.) In short, Colgate very smoothly had converted a motion for sanctions into a motion for reconsideration of two orders of remand in contravention of 28 U.S.C. §1447(d).

Judge Nickerson was not fooled and denied Colgate's request. The court was completely correct to do so. Under 28 U.S.C. §1447(d), "[a]n order remanding a case to State court from which it was removed is not reviewable on appeal or otherwise...." Federal law makes clear that this prohibition extends not only to an appellate court, but to a district court as well. Three J Farms, Inc. v. Alton Box Board Co., 609 F.2d 112 (4th Cir. 1979). As stated by this court in In re Lowe, 102 F.3d 731, 735 (4th Cir. 1996),

> "the intent of such rule is 'to suppress further prolongation of the controversy by whatever process." In re Pennsylvania Co.,137 U.S. 451, 454, 11 S.Ct. 141, 142, 34 L.Ed. 738 (1890). Thus, this nonreviewability rests on a "policy of not permitting interruption of the litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed." United States v. Rice, 327 U.S. 742, 751, 66 S.Ct. 835, 839, 90 L.Ed. 982 (1946). 'Removal in diversity cases, to the prejudice of state court jurisdiction, is a privilege to be strictly construed;' for this reason, in deciding whether to remand, '[t]he district court has one shot, right or wrong.' In re La Providencia [Development Corp., 406 F.2d 251, 252-253 (1st Cir. 1996). This policy is, of course, entirely consistent with a rule that remand orders become nonreviewable as soon as entered.

In <u>Three J Farms, Inc. v. Alton Box Board Co.</u>, 609 F.2d 112 (4th Cir. 1979), plaintiffs filed a timely motion remand on a case that had been removed to federal court, and the removing defendant petitioned that the district court stay the remand proceedings until the MDL panel had decided on transfer. The district court refused to stay the proceedings and ordered that the action be remanded back to state court. The defendants asked that the remand order be vacated based upon mistake and inadvertence, since the defendant never had the opportunity to file an opposition due to its decision to file a motion for stay. The district court reversed the order of remand, and plaintiffs appealed to the Fourth Circuit.

The Fourth Circuit held that the district court was without authority to review its own order of remand by virtue of 28 U.S.C. §1447(d). In doing so, it quoted <u>In re La Providencia [Development Corp.</u>, 406 F.2d 251, 252-253 (1st Cir. 1996), which stated:

> There is no more reason for a district court to review its own decision, and revoke the remand, than for an appellate court requiring it to do so. Both are foreclosed; nothing could be more inclusive that the phrase 'on appeal or otherwise'.

<u>Id</u>. at 155. The court again noted that the rationale for §1447(d) was grounded in principles of comity and judicial economy. <u>Id</u>. (quoting <u>La Providencia</u>, 406 F.2d

at 252 (an "...action must not ricochet back and forth depending upon the most recent determination of a federal court."))

In <u>Seedman v. U.S. District Court for the Central District of California</u>, 837 F.2d 413 (9th Cir. 1988), a removed action was remanded *sua sponte* based upon the district court's determination that the petition was untimely filed, and the removing defendants effectuated a second removal, claiming that the district court erred in ruling the original notice untimely. The district court agreed and vacated its original remand order on the grounds that it was based on a clerical error. The Ninth Circuit granted the plaintiff's writ of mandamus and noted that §1447(d)'s prohibition of review of remand orders "...has been universally construed to preclude not only appellate review but also reconsideration by the district court." Id. at 414. It further stated that "...if a remand order is based on section 1447(c), a district court has <u>no power to correct or vacate it.</u>" <u>Id</u> (emphasis added). The court concluded that since the district court originally ruled that the first notice of removal was untimely, the court had entered an order of remand pursuant to 28 U.S.C. §1447(c) and was powerless to correct the order "...regardless of whether the order was premised on a clerical error."

In <u>Hunt v. Acromed Corp.</u>, 961 F.2d 1079 (3rd Cir. 1992), it was held that a denial of a motion to amend a notice of removal was not reviewable by virtue of §1447(d). There the Third Court reasoned:

> Furthermore, we see little difference in principle between appellate review of an order of remand under 28 U.S.C § 1447(c), predicated upon a determination by the district court that it lacks subject matter jurisdiction, and a review of an order denying a motion to amend a defective notice of removal so that the district court will have jurisdiction Inasmuch as we are barred from entertaining the first appeal, it is difficult to understand why we should be able to hear the second. Moreover, if we exercised jurisdiction and considered this appeal on the merits we would, as a practical matter, create a large exception to the jurisdictional bar of 28 U.S.C. § 1447(d), as this ruling would effectively permit the appeal of some remand orders not otherwise appealable, under the guise of an appeal from the denial of a motion to amend the notice of removal. Therefore, even if the district court had jurisdiction to consider the motion to amend the notice of removal and denied it on the merits, it is doubtful that we could have had jurisdiction to hear an appeal from the denial of the motion.

Additionally, in <u>New Orleans Public Service, Inc. v. Majoue</u>, 802 F.2d 166 (5th Cir. 1986), the Fifth Circuit held parties cannot file independent declaratory action in federal court involving the same claims that had previously been remanded without violating 28 U.S.C. §1447(d). <u>See also</u> <u>Browning v. Navarro</u>, 743 F.2d 1069, 1079-1080, fn. 29. (5th Cir. 1984)(questioning the validity of conditional remand orders in light of §1447(d), but finding itself unable to review conditional remand orders by virtue of §1447(d)).

50

The import of this line of cases could not be more clear. Section 1447(d)'s prohibition on review of remand orders is far-reaching, barring not only reconsideration of a decision to remand a case by trial judges and appellate judges alike, but also collateral attacks upon remand orders through the creative use of other procedures. Its primary objective is to prevent the delay and confusion attendant with the review process, and to show deference to state court proceedings. This bar against review holds true even where the remanding judge himself is convinced that his remand orders were entered erroneously. As noted by the Ninth Circuit in Seedman, supra, a "...remand order returns [a] case to state courts and the federal court has no power to retrieve it." 837 F.2d at 414.

In trying to escape the impact of §1447(d), Colgate relies upon two lines of cases that are completely irrelevant in this case. Colgate turns to Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336(1976), and its progeny to argue that the imposition of federal jurisdiction as sanctions falls outside the scope of §1447(d) applies "...only if sought as a means of correcting an error in the district court's determination of its jurisdiction." Colgate's Brief, p. 32. There are two glaring concerns with this argument. First, Thermtron only applies when the underlying remand orders were entered for reasons other than those delineated under 28 U.S.C. §1447(c). The purpose of the reconsideration request simply does

not come into play in the <u>Thermtron</u> inquiry. If the remand orders were based upon the finding of the district court that it either lacked subject matter jurisdiction or that the removal was imprudent due to a procedural defect, the order may not be reviewed directly or, as the cases previously cited make clear, collaterally. <u>Three J Farms, Inc.</u>, 609 F.2d at 115-116.

In this case, both remand orders were entered pursuant to §1447(c). Colgate removed the <u>Mosko</u> and <u>Barlow</u> cases on the basis of diversity jurisdiction even though there were named Maryland defendants still in the case. Colgate argued that jurisdiction was proper, nonetheless, by virtue of the fraudulent joinder doctrine. Both Judge Quarles and Judge Nickerson disagreed and found that diversity jurisdiction did not exist in either case. These rulings fall squarely under the §1447(c) and, therefore, come under the ambit of §1447(d).

Secondly, Colgate's argument presupposes that it is proper under federal law to impose federal jurisdiction as a punishment upon a party. This concept runs afoul of the principles of federal jurisdiction as recognized by every court in the country. Federal courts are courts of limited jurisdiction, and those courts may only exercise jurisdiction over a case if it is authorized by statute. <u>Shamrock Oil & Gas Co. v. Sheets</u>, 313 U.S. 100 (1941). There simply is no federal jurisdictional

statute or removal statute which allows for the exercise of federal jurisdiction as a sanction.

The second group of cases Colgate cites to is likewise completely irrelevant to this case. In its brief, Colgate cites to <u>Tramonte v. Chrysler Corp.</u>, 136 F.3d 1025 (5th Cir. 1998), <u>Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.</u>, 179 F.3d 1279, 1288 (11th Cir. 1999), and similar cases for the proposition that its request that the remand orders be vacated is appropriate, since it comes in the form of a motion for sanctions and Rule 60 relief. This argument ignores that what those cases actually hold is that remand orders can be vacated for the sole purpose of reviewing a completely different order (such as an order of dismissal) that was entered in federal court prior to remand. As noted by the <u>Aquamar</u> court, remand orders are allowed to be vacated in those circumstances only for the purpose of reviewing the non-related order; however, the remand order itself retains vitality. The stated purpose for this rule is to ensure that losing parties to non-jurisdictional substantive decisions made in federal court do not also lose their right to appeal, by virtue of a subsequent remand to state court that would be powerless to review a decision made in another jurisdiction. 179 F.3d at 128. The remand order itself, however, could not be reversed. <u>Id</u> (citing <u>City of Waco v. United States Fidelity & Guar. Co.</u>, 293 U.S. 140, 143, 55 S.Ct. 6, 7 79 L.Ed. 244 (1934).

Hence, Judge Nickerson was perfectly correct in holding that he was powerless to grant Colgate's belated Motion for Rule 60 relief. Both the Mosko and Barlow cases had been remanded months prior, and they are now under the jurisdiction of the Circuit Court for Baltimore City. The remand orders entered by the district court in both cases were based upon the absence of federal jurisdiction and cannot be reviewed. To do so would jeopardize months of litigation that has been ongoing in state court throughout the pendency of these motions. The majority of discovery has been completed, and trial is scheduled for this Fall. To pull the Mosko and Barlow cases from their trial slot would undo all the progress that has been made in this contentious litigation, a result that Colgate would undoubtedly have no objection to.

III.   COLGATE'S REQUEST THAT THIS COURT OVERSTEP THE PROVINCE OF THE DISTRCT COURT AND RULE ON THE MERITS OF ITS MOTION FOR RULE 60(B)(3) IS NOT APPROPRIATE.

In this appeal, Colgate takes the extraordinary position asking that this Court rule on the merits of its Motion for Rule 60 Relief when Judge Nickerson has yet to do so. Judge Nickerson's order covered two distinct issues. First, he found that he could not rule upon the merits of Colgate's Rule 60 motion because it would constitute the review of unreviewable remand orders. Second, he ruled that even if Colgate had continued to press for Rule 11 monetary sanctions as its request for

relief was originally filed, he would have denied the request because the Plaintiffs had committed no misconduct in the federal proceedings. At no time did he look to the merits of Colgate's Rule 60 motion.

Colgate now asks this Court to step in as a pinch hitter and do the job itself. This request is completely inappropriate for several reasons. The first and most pressing reason is that Colgate was so dilatory in applying for Rule 60 relief that the Plaintiffs never had the opportunity to oppose the hastily filed motion before Judge Nickerson made his final decision. The very first time that that Colgate ever made known to the federal court that it was requesting that the remand orders issued, seven months prior, be vacated was on June 20, 2013 at the hearing on the Motion for Sanctions. It then filed its Motion for Rule 60(b)(3) relief four days later on June 24, 2013, and Judge Nickerson denied both the Motion for Sanctions and the Rule 60(b)(3) motion on June 26, 2013. Plaintiffs never received the opportunity to file an opposition on the merits with regard to Colgate's Rule 60(b)(3) motion. Hence, the trial record is glaringly incomplete because Colgate is the only party who had the "luxury" of building its trial record on the Rule 60(b)(6) in the proper court. It would be blatantly unfair to force the Plaintiffs use this Court as a surrogate district court and argue for the first time the merits of its opposition on appeal. Should this Court reverse Judge Nickerson and find that

parties may employ Rule 60 to collaterally attack remand orders that are deemed unreviewable under §1447(d), it should remand this case for further proceedings so that a full and fair briefing of the issues involved in a Rule 60(b) proceeding can take place.

Colgate's request invites this Court to invade the province of the district court and decide an issue that is intended for the district court. An order disposing of a motion under Rule 60 is reviewed under an abuse of discretion standard, and a district court's ruling is "not lightly disturbed by an appellate court." <u>Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.</u>, 383 F.2d 249 (4th Cir. 1967). Here however, Colgate presses this Court to strip that discretion away altogether. Judge Nickerson has been intimately involved with these proceedings from their inception, and he is in the best position to adjudicate Colgate's motion should this Court find that remand orders may be reviewed under Rule 60. Should this court reverse the lower court, Judge Nickerson should be afforded the deference of ruling on the merits of Colgate's motion after a full briefing has been completed.

As for the merits of Colgate's request in arguing the merits of its Rule 60(b)(3) motion, Plaintiffs will make one brief point. Colgate filed its Motion for 50(b)(3), far too late to be considered by the district court. Rule 60(c)(1) states:

(1)    Timing. A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

Under the plain language of this Rule, a motion must be filed within a reasonable time not to exceed one year. It has been held by this court that a party who waits even a mere three or four months after the entry of the judgment is unreasonable if the party has "no valid reason is given for the delay." McLawhorn v. John W. Daniel & Co., Inc., 924 F.2d 535, 538 (4th Cir. 1991)(citing Central Operating Co. v. Utility Workers of America, 491 F.2d 245 (4th Cir. 1974) and Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp., 383 F.2d 249 (4th Cir. 1967).

It is highly unlikely that any district court would find that Colgate brought its Rule 60 motion to the district court's attention in a reasonable time period. Colgate had all the information that it claims constitutes misconduct in its possession at the beginning of December 2012. Yet, Colgate did not file its Motion for Rule 60 Relief until seven months later. During that large gap of time, Colgate filed two motions for sanctions against Plaintiffs in federal court asking for monetary sanctions and one motion for sanctions in state court asking that the state court dismiss the remanded actions and order that the Plaintiffs refile the lawsuits in federal court.

After failing to entice the state court to interfere with federal jurisdictional matters, Colgate turned its attention back to the federal sanctions filings. Colgate did not amend its sanctions motions to reflect any request for Rule 60 relief, and filed <u>two</u> replies, which made no mention of Colgate's desire for Rule 60 relief. It was not until the hearing on Colgate's Motions for Sanctions, in its rebuttal, that Colgate made known to the Plaintiffs and the Court that Colgate did not want monetary sanctions after all; it wanted Rule 60 relief. A formal motion was forthcoming four days later. Colgate's dilatory is by definition unreasonable.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the District Court's ruling denying Colgate's Motion for Sanctions and Motion for Rule 60 Relief be AFFIRMED.

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)

This brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B) because it contains 13,849 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements

of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman.


_____/s/ Jennifer L. Lilly_____          _____August 16, 2013___
Attorney for Plaintiffs-Appellees                          Date

Respectfully submitted,


/s/ *Jennifer L. Lilly*
Jennifer L. Lilly
Federal Bar #28356

LAW OFFICES OF PETER G. ANGELOS, P.C.
One Charles Center, 22nd Floor
100 North Charles Street
Baltimore, Maryland 21201
(410) 649-2000

Attorneys for Plaintiffs-Appellees

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of August, 2013, a copy of the

foregoing Appellees' Brief in Opposition was served via e-filing upon:

> Faith E. Gay, Esquire
> William B. Adams, Esquire
> Quinn Emanuel Urquhart & Sullivan, LLP
> 51 Madison Avenue
> 22[nd] Floor
> New York NY 10010
> (212) 849-7000
>
> and
>
> Thomas P. Bernier, Esquire
> Segal McCambridge Singer & Mahoney
> One North Charles Street
> Suite 2500
> Baltimore MD 21201
> (410) 779-3960
>
> *Attorneys for Defendant-Appellant*
> *Colgate Palmolive Company.*

> /s/ **Jennifer L. Lilly**
> Jennifer L. Lilly #28356
> Law Offices of Peter G. Angelos
> One Charles Center
> 22[nd] Floor
> 100 North Charles Street
> Baltimore, MD 21201



**C**

United States Code Annotated Currentness

  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)

    Title III. Pleadings and Motions

      →→ **Rule 11. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanc- tions**

**(a) Signature.**Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omis- sion is promptly corrected after being called to the attorney's or party's attention.

**(b) Representations to the Court.**By presenting to the court a pleading, written motion, or other paper- -whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circum- stances:

  **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or need- lessly increase the cost of litigation;

  **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argu- ment for extending, modifying, or reversing existing law or for establishing new law;

  **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have eviden- tiary support after a reasonable opportunity for further investigation or discovery; and

  **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reason- ably based on belief or a lack of information.

**(c) Sanctions.**

  **(1)** *In General.*If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that viol- ated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

  **(2)** *Motion for Sanctions.*A motion for sanctions must be made separately from any other motion and must

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

**(3)** *On the Court's Initiative.*On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

**(4)** *Nature of a Sanction.*A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

**(5)** *Limitations on Monetary Sanctions.*The court must not impose a monetary sanction:

  **(A)** against a represented party for violating Rule 11(b)(2); or

  **(B)** on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

**(6)** *Requirements for an Order.*An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

**(d) Inapplicability to Discovery.**This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.

CREDIT(S)

(Amended April 28, 1983, effective August 1, 1983; March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 30, 2007, effective December 1, 2007.)

Amendments received to 7-15-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

United States Code Annotated Currentness

Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)

Title VII. Judgment

**Rule 60. Relief From a Judgment or Order**

**(a) Corrections Based on Clerical Mistakes; Oversights and Omissions.**The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.**On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reas- ons:

**(1)** mistake, inadvertence, surprise, or excusable neglect;

**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

**(c) Timing and Effect of the Motion.**

**(1)** ***Timing.***A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

**(2)** ***Effect on Finality.***The motion does not affect the judgment's finality or suspend its operation.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(d) Other Powers to Grant Relief.** This rule does not limit a court's power to:

    **(1)** entertain an independent action to relieve a party from a judgment, order, or proceeding;

    **(2)** grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or

    **(3)** set aside a judgment for fraud on the court.

**(e) Bills and Writs Abolished.** The following are abolished: bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela.

CREDIT(S)

(Amended December 27, 1946, effective March 19, 1948; December 29, 1948, effective October 20, 1949; March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007.)

Amendments received to 7-15-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



**C**

**Effective: November 9, 2011**

United States Code Annotated Currentness
 Title 28. Judiciary and Judicial Procedure (Refs & Annos)
  Part IV. Jurisdiction and Venue (Refs & Annos)
   Chapter 89. District Courts; Removal of Cases from State Courts (Refs & Annos)
   → → **§ 1447. Procedure after removal generally**

(a) In any case removed from a State court, the district court may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise.

(b) It may require the removing party to file with its clerk copies of all records and proceedings in such State court or may cause the same to be brought before it by writ of certiorari issued to such State court.

(c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

(d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

(e) If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 939; May 24, 1949, c. 139, § 84, 63 Stat. 102; July 2, 1964, Pub.L. 88-352, Title IX, § 901, 78 Stat. 266; Nov. 19, 1988, Pub.L. 100-702, Title X, § 1016(c), 102 Stat. 4670; Dec. 9, 1991, Pub.L. 102-198, § 10(b), 105 Stat. 1626; Oct. 1, 1996, Pub.L. 104-219, § 1, 110 Stat. 3022; Pub.L. 112-51, § 2(d), Nov. 9, 2011, 125 Stat. 546.)

Current through P.L. 113-22 approved 7-25-13

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

### United States Court of Appeals for the Fourth Circuit

#### Notice of Docket Activity

The following transaction was entered on 08/16/2013 at 7:06:33 PM EDT and filed on 08/16/2013

| | |
|---|---|
| **Case Name:** | Joyce Barlow v. Colgate Palmolive Company |
| **Case Number:** | 13-1839 |
| **Document(s):** | Document(s) |

#### Docket Text:
BRIEF by Appellee Joyce Barlow in 13-1839, Appellee Clara G. Mosko in 13-1840 in electronic and paper format. Type of Brief: Response. Method of Filing Paper Copies: hand delivery. Date Paper Copies Mailed, Dispatched, or Delivered to Court: 08/19/2013. [999174766] [13-1839, 13-1840] Jennifer Lilly

#### Notice will be electronically mailed to:

Mr. Thomas Peter Bernier: TBernier@smsm.com, MNyulasi@smsm.com, KEverest@smsm.com, BWhetzel@smsm.com
Jennifer Louise Lilly: jlilly@lawpga.com
William Balden Adams: williamadams@quinnemanuel.com
Ms. Faith Elizabeth Gay: faithgay@quinnemanuel.com


The following document(s) are associated with this transaction:
**Document Description:** BRIEF (all formal, non-sealed briefs/electronic & paper form)
**Original Filename:** Plaintiffs' Brief in Opposition filed 08 16 2013.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105645354 [Date=08/16/2013] [FileNumber=999174766-0]
[9dde1a13bf4e81a416a0ea2850eaf5997657f617c110f6222dab623a69f3fa037aa2c89bb2867937afd6db3e938ac769be98c9ed0522d3cbdafab8adbc722102]]